United States Court of Appeals,

Eleventh Circuit.

No. 96-6652.

Linda FRANKLIN;  Linda Franklin, as Administratrix of the Estate of Ronia Franklin, Plaintiffs-Appellants,

v.

QHG OF GADSDEN, INC. d.b.a. Gadsden Regional Medical Center, Defendant-Appellee.

Nov. 7, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV96-L-691-M), Seybourn H. Lynne, Judge.

Before ANDERSON and COX, Circuit Judges, and ALARCÓN[*], Senior Circuit Judge.

ALARCÓN, Senior Circuit Judge:

Linda and Ronia Franklin appealed from the district court's grant of summary judgment in favor of QHG of Gadsden, doing business as Gadsden Regional Medical Center ("QHG").  Ronia Franklin expired on April 13, 1997.  By separate order, Linda Franklin was substituted in as a party in her capacity as the administratrix of the Estate of Ronia Franklin.  Appellants contend that the district court erred in finding that the state law claims against QHG for fraud, misrepresentation, deceit, and fraudulent deceit were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  We hold that the state law claims are preempted by ERISA and affirm.

I

Prior to his demise, Linda and Ronia Franklin were husband and wife.  Since 1983, Mr. Franklin was bedridden due to a series of strokes and other ailments.  He received 24-hour home nursing care under the welfare benefit plan provided by his wife's former employer, Goodyear Tire & Rubber Company ("Goodyear").  While working for Goodyear, Mrs. Franklin obtained a nursing license.

---

[*]Honorable Arthur L. Alarcón, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

In 1992, she was offered a position at Baptist Memorial Hospital ("BMH"). Mrs. Franklin explained to BMH that she could not accept the offer without assurance that her husband would receive the same level of care that he was receiving under the Goodyear welfare benefits plan. BMH agreed to provide Mr. Franklin with "grandfather status" for skilled nursing care for tube feeding and transfer him into their employee welfare benefit plan as Mrs. Franklin's beneficiary. She accepted BMH's offer of employment and resigned from Goodyear. In a May 18, 1993 letter, BMH confirmed its understanding of its employment negotiations with Mrs. Franklin in the following words:

> Ronia Franklin, spouse of our employee, Linda Franklin, was grandfathered into skilled nursing care for tube feeding with Goodyear Tire and Rubber Company. We also understand and agree that this grandfathering status transferred to our group # 71974 effective 1/20/92, the date of Ms. Franklin's employment with us.

BMH's group health care plan provided that "[y]ou must be a member for 270 days before benefits are available for pre-existing conditions." It appears that the term "grandfathered" in the May 18, 1993, letter refers to waiver of the plan's required waiting period before Mr. Franklin could receive medical care.

The BMH group health care plan provided that

> Baptist Memorial Hospital currently intends to continue the Group Health and Dental Care Plan as described in this booklet, but reserves the right, in its discretion, to amend, reduce, or terminate the plan and coverage at any time for active employees, retirees, former employees, and all dependents.

QHG purchased BMH in October of 1993. Mrs. Franklin continued working at the hospital after the change in ownership. As an employee of QHG she was covered by that company's employee health plan.

On November 22, 1995, Mrs. Franklin was informed that QHG's employee health plan was going to be modified effective January 1, 1996. The new plan provided that "[h]ome health care benefits, which are medically necessary, are provided at 80% of the usual, customary and reasonable charge not subject to the MAJOR MEDICAL deductible." The modified plan excluded benefits for "private-duty nursing service or 24 hour nursing care."

2

In a letter dated January 18, 1996, Dolly A. Ritchie, the assistant administrator of Human Resources/Quality Management Services at QHG, stated: "As you recall, on November 22, 1995, you received a copy of the GRMC Group Health Care Plan that informed you of changes that would become effective January 1, 1996." The letter noted that under this plan "benefits are not provided for private duty nursing services or 24 hour nursing care." The letter also provided that "[i]n order to allow you a time of transition, we will extend coverage for private duty nursing through Friday, February 1, 1996."

In a letter dated January 23, 1996, Ms. Ritchie stated that "[o]ur current health care plan covers home health care which would include intermittent medical monitoring of the N-G tube and two port Gronshong catheter mentioned in your letter." The letter also contained the following statement: "Mrs. Franklin, no promises were made to you last spring. What we stated is that we would extend coverage until such time clarification of coverage was examined and verified by our health care provider." The letter closed by stating that "the medical center has changed ownership since your original date of employment. As do most employers with benefit plans covered under ERISA, we reserved the right to make changes and modifications to benefit plans offered to our associates."

Appellants filed a complaint against QHG in state court on February 7, 1996. The complaint alleged that Mrs. Franklin was fraudulently induced to leave her employment with Goodyear as the result of misrepresentations of material facts, suppression, deceit, and fraudulent deceit regarding the medical coverage that would be provided to her husband if she accepted BMH's offer of employment. The complaint further alleges that BMH misrepresented that appellants "would continue to enjoy the same level of care being provided to Linda's husband [under Goodyear's medical benefits plan] *and the care would not be reduced.*" (emphasis added).

QHG filed a notice of removal in the district court on March 14, 1996. QHG alleged that appellants' "claims against defendant are properly characterized as claims for benefits under Section

3

502(a)(1)(B) of ERISA, 29 U.S.C. Section 1132(a)(1)(B)."[1] Appellants filed a motion for a remand in which they argued that removal was inappropriate because "the tortious conduct complained of (and which is the only basis of the allegations in the plaintiffs' complaint) occurred prior to the development of a relationship between the plaintiffs and the defendant and/or the defendant's predecessor that could in any respect be governed by the Employee Retirement Income Security Act." Appellants also asserted that "the relief sought by the plaintiffs, damages for fraud, are not damages being sought for failure to provide benefits under an insurance policy, but rather, are damages proximately caused by the fraud and suppression alleged in the complaint." The district court denied appellants' motion to remand to the state court.

On March 14, 1996, QHG filed a motion for summary judgment. QHG argued that appellants' claims must be dismissed because "[p]laintiffs have not filed the required written request for review or appeal" under ERISA. In their response to QHG's motion for summary judgment, appellants argued that "the [QHG] ERISA Plan did not apply in this case." Appellants asserted that they "do not allege a violation of the Plan document" and "do not seek relief pursuant to the Plan document." Finally, they maintained that "*all* of the events which are the subject of the plaintiffs' complaint (except for damages) occurred *prior to* plaintiff Linda Franklin's employment relationship with the defendant and/or the defendant's predecessor."

The district court granted QHG's motion for summary judgment. The Franklins filed a timely notice of appeal.

II

---

[1]Section 1132(a)(1)(B) provides

A civil action may be brought—

(1) by a participant or beneficiary—

...

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of this plan.

Appellants contend that removal to federal court was improper because "*nothing* is found in the Franklin complaint that would support the suggestion that the complaint is subject to the preemptive provisions of [the] Employee Retirement Income Security Act." Appellants' Br. at 14.

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. Because the parties do not have diverse citizenship, this court must determine whether the claims alleged in appellants' complaint arise under federal law. *Kemp v. International Business Machines Corp.,* 109 F.3d 708, 712 (11th Cir.1997).

Under the "well-pleaded complaint" rule, "[a] case does not arise under federal law unless a federal question is presented on the face of the plaintiff's complaint." *Id.* The plaintiff is the "master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In *Caterpillar Inc. v. Williams,* the Supreme Court instructed that the well-pleaded complaint rule is inapplicable under certain circumstances. *Id.* at 392, 107 S.Ct. at 2429. A defendant may remove a complaint alleging only state law claims to federal court if the allegations in the complaint involve an area of law that Congress has completely preempted. *Id.* "Congress has accomplished this "complete preemption' in 29 U.S.C. § 1132(a), which provides the exclusive cause of action for the recovery of benefits governed by an ERISA plan."[2] *Kemp,* 109 F.3d at 712. "ERISA "completely preempt[s]' the area of employee benefit plans and thus converts state law claims into federal claims

[2]Section 1132(a) provides in pertinent part

A civil action may be brought-

(1) by a participant or beneficiary-

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

when the state law claim is preempted by ERISA and also falls within the scope of the civil enforcement section of ERISA, Section 502(a), 29 U.S.C. § 1132(a)." *Brown v. Connecticut General Life Ins. Co.,* 934 F.2d 1193, 1196 (11th Cir.1991) (alteration in original) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64, 107 S.Ct. 1542, 1546-47, 95 L.Ed.2d 55 (1987)). "To sum up, the jurisdictional issue ... turns on whether the plaintiffs are seeking relief that is available under 29 U.S.C. § 1132(a)." *Kemp,* 109 F.3d at 712.

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). For purposes of ERISA, an "employee benefit plan" is:

> (1) a "plan, fund or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits ... (5) to participants or their beneficiaries.

Appellants argue that their "claims of fraud in the inducement do not sufficiently "relate to' ERISA governed plans so as to come within the preemptive parameters of ERISA." Appellants' Br. at 18.

The Supreme Court has given an expansive interpretation to the term "relate to." The court has held that a state law relates to an employee benefit plan "if it has a connection with or reference to such a plan." *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983)). This court has also stated that "[a] party's state law claim "relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mutual Life Ins. Co.,* 114 F.3d 186, 187 (11th Cir.1997). "[W]here state law claims of fraud and misrepresentation are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan and its benefits system." *Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc.,* 57 F.3d 1040 (11th Cir.1995).

Appellants have attempted to avoid the complete preemption doctrine by characterizing the complaint as one seeking damages for fraud in the inducement, misrepresentation, and deceit. They

6

did not allege that they are entitled to benefits pursuant to QHG's welfare benefits plan. They maintain that their state law tort claims are based solely upon the tortious conduct in BMH's employees fraudulently inducing Mrs. Franklin to accept its offer of employment.

The record shows, however, that the alleged fraudulent representations regarding the benefits that would be available to Mr. Franklin were expressly referred to BMH's welfare benefits plan. The May 18, 1993 letter to appellants sets forth the promise that was made to Mrs. Franklin as an inducement to acceptance of the offer of employment. BMH promised that Mr. Franklin would be "grandfathered into skilled nursing care" and Mrs. Franklin would be "transferred to our group # 71974 effective 1/20/92, the date of Ms. Franklin's employment with us."

It is undisputed that the BMH medical plan contained a provision that it was subject to amendment or termination at any time. BMH provided Mr. Franklin with the benefits set forth in its medical plan when Mrs. Franklin commenced her employment with BMH.

In the complaint, appellants alleged that BMH orally agreed that Mr. Franklin "would continue to enjoy the level of medical care then provided to Linda's husband, and the care would not be reduced." In the reply brief, appellants referred to this agreement as a "never-ending commitment." Appellants' Reply Br. at 2. While Mrs. Franklin was employed at Goodyear, her husband received health care under that company's medical benefits plan. Thus, construing the facts in the light most favorable to the Franklins, under the alleged side agreement, BMH promised Mrs. Franklin that her husband would receive benefits under BMH's medical plan, but its 24-hour nursing care provisions would not be subject to modification or termination.

In *Nachwalter v. Christie,* 805 F.2d 956 (11th Cir.1986), this court held that the written terms of a medical welfare plan cannot be modified by oral agreements. *Id.* at 959-960. This court explained that oral modifications are unenforceable under ERISA because the goal of protecting the interests of employees and their beneficiaries "would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on those plans if their

expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements." *Id.* at 960.

Appellants assert that this court's decision in *Morstein v. National Ins. Servs. Inc.,* 93 F.3d 715 (11th Cir.1996) (en banc) should be extended to the circumstances presented in this case. Their reliance on *Morstein* is misplaced. In *Morstein,* a plan beneficiary filed state law claims for fraudulent inducement against an independent insurance agent and his agency. *Id.* at 716. The plaintiff in *Morstein* alleged that the agent fraudulently induced her to change benefit plans. This court noted that the insurance agent and his agency were not ERISA entities. *Id.* at 722. An ERISA entity was defined as "the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Id.* This court held that the claims against the independent insurance agent and his agency did not have a sufficient connection with the plan to relate to it. *Id.* at 724.

Here, unlike the circumstances in *Morstein,* Mrs. Franklin and MPH were ERISA entities at the time the alleged fraudulent representations were made. The alleged misrepresentation relates directly to MPH's medical benefits plan. Mrs. Franklin was allegedly told she would receive comparable benefits to those available under Goodyear's ERISA benefits plan. Mr. Franklin was "grandfathered" into MPH's medical benefits plan. The gravamen of appellants' grievance against QHG is that it modified its ERISA medical benefit plan to eliminate 24-hour home nursing care. Thus, a determination of the merits of appellants' state law claims will require a court to compare the benefits available under the ERISA plans provided by BMH and QHG with those provided to its employees by Goodyear. Accordingly, appellants' state law claims have a direct connection to the administration of medical benefits under an ERISA plan. We hold, therefore, that they are completely preempted. The district court did not err in denying the motion for a remand and in ordering summary judgment in favor of QHG.

AFFIRMED.