**Joyce YORK, et. al., Plaintiffs,**

v.

**RAMSAY YOUTH SERVICES OF DOTHAN, et. al., Defendants.**

**No. CIV.A. 03–A–837–S.**

United States District Court,
M.D. Alabama,
Southern Division.

March 29, 2004.

Joyce York, on behalf of herself and all others similarly situated Charles David Decker, Charles D. Decker P.C., Douglas M. Bates, Dothan, AL, for Plaintiff.

Ramsay Youth Services of Dothan, a subsidiary of Ramsay Youth Services of Alabama, Inc., Alisha Ruffin May, Lloyd, Gray & Whitehead, P.C., Mark E. Tindal, Lloyd, Gray & Whitehead, P.C., Stephen E. Whitehead, Lloyd, Gray & Whitehead, P.C., Birmingham, AL, for Defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

On June 30, 2003, Joyce York, Linda Severson Ford, Jerva Culver, Sara Law-

rence, Carmencita Hicks, and Miles Miller, III (Plaintiffs) filed a Complaint in the Circuit Court of Houston County, Alabama. In their Complaint, the Plaintiffs bring claims for fraud, conversion, negligence, conspiracy to defraud, conspiracy to commit conversion, and intentional or reckless infliction of emotional distress. Complaint ¶ 3–55.[1] Ramsay Youth Services of Dothan, Ramsay Youth Services of Alabama, Inc., Psychiatric Solutions of Alabama, Inc. and Steve McCabe (Defendants) jointly removed the case to this court on August 7, 2003. The Defendants filed a motion to dismiss, or in the alternative a motion for summary judgment, and a motion to strike the Plaintiffs' jury demand. (Doc. # 3). For reasons to be discussed, the Defendants' Motion to Dismiss is due to be Granted; the Plaintiffs' Motions in the alternative for Summary Judgment and to Strike the Plaintiffs' Jury Demand are due to be Denied as Moot.

## II. *MOTION TO DISMISS STANDARD.*

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiffs' Complaint are as follows:

The Plaintiffs are employees of the Defendants, who through their payroll deductions purchased life and health insurance and stock options. Health insurance was to be provided by Blue Cross/Blue Shield of Alabama (hereinafter Blue Cross/Blue Shield). The employees were allowed to choose from several different health insurance plans including Single Employee, Family with PCN and PMD, Employee Plus 1, and PCN insurance. The Plaintiffs received regular pay for their work for the Defendants. Deductions were made from their pay for health insurance and in some cases life insurance and stock options. Blue Cross/Blue Shield provided contract cards; the Plaintiffs believed that they had health insurance via Blue Cross/Blue Shield.

During the summer of 2002, the Plaintiffs learned of the cancellation of their insurance coverage through Blue Cross/Blue Shield. Several Plaintiffs learned of the cancellation through seeking medical treatment and having their insurance coverage denied. As a result, they were billed by their health care provider. When the

---

1. As stated by the Defendants, "[o]n the face of the complaint, plaintiffs seek to recover contributions allegedly wrongfully withheld from an employee welfare benefit plan by way of state law claims of fraud, conversion, breach of contract, conspiracy to defraud, conspiracy to convert funds, and outrage." Defendants' Notice of Removal at 3.

Plaintiffs contacted the Defendants regarding the cancellation of their policy, they were issued duplicate insurance cards that had the same policy and contract number as the cancelled policies. The Plaintiffs were told that the insurance was still in full force and effect, that the coverage by Blue Cross/Blue Shield continued. The Plaintiffs, nevertheless, contacted Blue Cross/Blue Shield, which informed the Plaintiffs that the Defendants had not paid the bill for the premiums and that their health insurance had lapsed due to non-payment of premiums. There is no allegation from the Plaintiffs that the insurer has acted improperly.

Defendant Steve McCabe and the Plaintiffs met during the summer of 2002. McCabe admitted that the premiums had not actually been paid. He explained that an employee had not paid the invoice sent by Blue Cross/Blue Shield. McCabe informed the Plaintiffs that he personally delivered the premium payments to Blue Cross/Blue Shield, and that the insurance would be retroactively reinstated. After the meeting with McCabe, the Plaintiffs were told by Blue Cross/Blue Shield that there was still no insurance available to them. Subsequently, Blue Cross/Blue Shield issued to the Plaintiffs new insurance cards with a different contract and account number. The insurance was not, however, made retroactive to the time that it lapsed for non-payment of premiums by the Defendants.

The Defendants withheld from the Plaintiffs' payroll checks income that was to be paid for life and health insurance premiums. The Defendants promised the Plaintiffs that they were paying the premiums, when in fact the premiums were not being paid, which resulted in the policy lapsing. The Defendants then admitted that the premiums had not been paid, but assured the Plaintiffs that upon the insurance premiums being paid the insurance would be retroactively reinstated. The Plaintiffs believed the Defendants, thus they did not obtain additional coverage or pay additional insurance premiums. Furthermore, the Plaintiffs continued to seek medical care under the assumption that the policy remained in effect. As a result of the Defendants' actions, "[t]he Plaintiffs lost the benefit of their wages and the use of their own money; Plaintiffs were not covered by insurance and thus were caused to pay in full all medical expenses incurred while the policy was not in force; the Plaintiffs were caused to suffer emotional distress as the result of the Defendants conduct." Complaint ¶ 34. The medical coverage was renewed after four or five months, but this coverage has not been made retroactive. The Plaintiffs have demanded a refund of their wages, which were not actually used to pay premiums and to purchase stock. The Defendants have refused to return the money. The Plaintiffs seek compensatory and punitive damages related to their medical expenses and emotional distress.

## IV. DISCUSSION

■ As the Defendants point out in their Notice of Removal, "[o]n the face of the complaint, plaintiffs seek to recover contributions allegedly wrongfully withheld from an employee welfare benefit plan by way of state law claims of fraud, conversion, breach of contract, conspiracy to defraud, conspiracy to convert funds, and outrage." Defendants' Notice of Removal at 3. The Defendants contend that these state law claims are due to be dismissed without prejudice, because these claims are preempted under ERISA. The Defendants are correct.

As in *Cory,* the Plaintiffs' "allegations relate directly to the employee benefit plan and, in effect, seek to bypass the plan by suing for fraud and conversion in the collection of the premiums that supported the benefits under the plan." *Cory v. Pearl, Inc.,* 602 So.2d 366, 368 (Ala.1992). The Alabama Supreme found such an action to be within the scope of Congressional preemption pursuant to 29 U.S.C. § 1144(a). In circumstances where an ERISA plan was established, the Alabama Supreme Court is not alone in reaching the conclusion that state law claims for fraud and conversion brought against an employer for failing to continue to remit payroll deductions to an insurer are preempted by ERISA.

■ The employees in *Satterly* filed a class action against their employer alleging that the company had stopped remitting the payroll deductions to the insurer. *Satterly v. Life Care Centers of America, Inc.,* 204 Ariz. 174, 61 P.3d 468, 470 (2003). The plaintiffs asserted state law claims of breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, conversion, accounting, and negligence. *Id.* at 470–71. The court found that all of the claims asserted by the Plaintiffs, including the non-fiduciary claims, derived from the alleged failure of the employer, an ERISA fiduciary, to remit the insurance premiums to the insurer. *Id.* at 472. "An ERISA fiduciary (i.e., one who is entrusted with plan assets) owes duties of loyalty and care to the plan." *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 471 (7th Cir.1997). Included among the duties imposed upon a fiduciary is a requirement that insurance payments be remitted in a timely fashion to the insurer by the fiduciary. *Satterly,* 61 P.3d at 472. Because each of the plaintiffs' claims, as in

the case presently before the court, was derived from the employer's failure to make these payments, the Arizona court determined that it would be impossible to consider the plaintiffs' claims without considering the plan and the duties imposed upon the ERISA fiduciary. *See id.* Accordingly, the court found that the state law claims are preempted by ERISA. *Id.* at 475. It noted that "[i]n this case, the Plaintiffs, in their roles as ERISA plan participants, assert claims against Las Fuentes, in its role as employer, administrator, and/or fiduciary under the Plan. Accordingly, the dispute between Plaintiffs and Las Fuentes falls squarely within the scope of 29 U.S.C. § 1132, and is manifestly the type of dispute Congress intended to resolve under the statute." *Id.*

When presented with similar circumstances, the Georgia Court of Appeals reached the same conclusion, based upon reasoning similar to that advanced by the Arizona Court of Appeals. In *Time Ins. Co.,* the Plaintiff sought "to recover damages he allegedly incurred when [his employer] allowed a group health insurance policy to lapse." *Time Ins. Co., Inc. v. Roberts,* 191 Ga.App. 766, 382 S.E.2d 718 (1989). Although the plaintiff argued that "his complaint was drafted to assert state common law claims rather than a cause of action under ERISA, given Congress' intent to occupy the field completely, [the court determined that it] must construe [the plaintiff's] complaint, which alleges various wrongful acts by [the employer], the plan fiduciary, as falling within the scope of ... 29 U.S.C. § 1132(a), and thus preempted by ERISA." *Id.* at 719.

The Plaintiffs, nevertheless, argue that the failure of the Defendant to pay the insurer resulted in termination of the plan, thus the Plaintiffs' claims are not brought

under an ERISA plan. The Eighth Circuit has "consider[ed] whether preemption of appellants' claims was improper because, as appellants argue, the plan has been terminated, and thus, their causes of action for wrongful termination do not 'relate to' an employee benefit plan." *Robinson v. Linomaz*, 58 F.3d 365, 370 (8th Cir.1995). The court reasoned that "[i]n most if not all cases, an examination of the termination of a plan governed by ERISA will require reference to the various provisions of the statute and the terms of the plan itself." *Id.* Therefore, the court held "that appellants' claims of wrongful termination of the policy do 'relate to' an 'employee benefit plan' and are therefore preempted by ERISA." *Id.* Although the facts of *Robinson* differ from the case presently before the court, the reasoning still applies; in assessing liability and damages, ERISA provisions will need to be considered to determine what duties are imposed upon an ERISA fiduciary and the terms of the plan will need to be considered to assess the Plaintiffs' damages. Thus, the Plaintiffs' claims relate to an ERISA plan.

 Even though the Plaintiffs' claims relate to an ERISA plan, a jurisdictional concern, nevertheless, remains. Deriving authority from Article III of the Constitution and the laws promulgated by Congress, this court's jurisdiction may not be expanded by waiver or consent of the parties. *Harris v. U.S.*, 149 F.3d 1304, 1308 (11th Cir.1998) (citing *Latin Am. Property & Cas. Ins. Co. v. Hi–Lift Marina, Inc.*, 887 F.2d 1477, 1479 (11th Cir.

1989)). *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994) (stating that Federal courts are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress."). The jurisdictional restriction serves as a limitation on federal power and helps to define the federal sovereign. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). It is a longstanding principle of American jurisprudence that even if the parties fail to raise a jurisdictional issue, a federal court is obligated to address any concerns upon its own motion. *Id.* (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)); *see also University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (stating that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking"); *Harris v. U.S.*, 149 F.3d 1304, 1308 (11th Cir.1998).[2] This independent obligation of a federal court to review its authority to hear a case before it proceeds to the merits emanates from the principle of limited jurisdiction of the federal courts. *Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1400–01 (11th Cir.2000). If the court lacked jurisdiction to hear this case, remand to the Circuit Court of Houston County, Alabama would be warranted.

In a previous case, this court expressed concerns about whether the existing case law contributes to the morass that is ERISA law by confusing defensive pre-

---

**2.** The Plaintiffs do state that "should this court find that Plaintiffs' claims are not ERISA claims, then this matter should be remanded to the Circuit Court of Houston County, Alabama[;]" however, there is no mo-

tion to remand pending before this court. Plaintiffs' Response to Defendant's Motion to Dismiss, Etc. at 5 (hereinafter "Plaintiffs' Response").

emption, which should not confer jurisdiction over state law claims upon a federal court, with complete preemption, which would provide a federal court with jurisdiction. *Wilson v. Coman*, 284 F.Supp.2d 1319 (M.D.Ala.2003) (providing a more thorough discussion of this court's understanding of the Eleventh Circuit's ERISA jurisdictional jurisprudence).[3] This case presents an opportunity to revisit the issue of jurisdiction in cases where ERISA may be implicated.

■ The Plaintiffs' well-pleaded complaint advances exclusively state law claims. The "paramount policies embodied in the well-pleaded complaint rule ... [are] that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The well-pleaded complaint rule, however, is not without limitations. "Even though state law creates appellant's causes of action, [her] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that [her] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420

(1983).[4] This does not mean that a case can be "removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393, 107 S.Ct. 2425. In addition to the rarely applicable substantial question limitation, removal is permitted where complete preemption exists. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

This court concluded in *Wilson v. Coman* that two tests exist in the Eleventh Circuit to determine whether a federal court has jurisdiction over cases involving ERISA. Simply stated, "the complete preemption analysis utilized in *Hall* and *Franklin* is different from the analysis the court relied on in *Butero*." *Wilson*, 284 F. Supp 2d at 1336 (citing *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir.1999); *Hall v. Blue Cross/Blue Shield of Ala.*, 134 F.3d 1063 (11th Cir. 1998); *Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024 (11th Cir.1997)). Despite having significant reservations about the analysis utilized by the Eleventh Circuit in *Hall* and *Franklin*, this court in *Wilson*, pursuant to the prior panel rule, concluded that it was bound by the approach the Eleventh Circuit utilized in *Franklin*, not the approach set forth in *Butero*, and thus denied a motion to remand. *Wilson*, 284 F.Supp.2d at 1341. Although the court

3. Prior decisions of this court may also have reflected this confusion by conflating defensive and complete preemption.

4. Simply because the Plaintiffs could have asserted a federal claim does not give this court federal question jurisdiction pursuant to substantial question analysis, as long as federal law is not essential to the state law claim which is advanced. *Bishop v. Ala. Dept. of*

*Envtl. Mgmt.*, 108 F.Supp.2d 1323, 1325 (M.D.Ala.2000). Original federal jurisdiction, however, may be present if a "disputed question of federal law is a necessary element of one of the well-pleaded state claims ...." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841.

certified *Wilson* for interlocutory appeal, the appeal was dismissed due to the parties' settlement of the case.

Later, the Eleventh Circuit in *Ervast* further clarified the preemption issue. *Ervast v. Flexible Products Co.,* 346 F.3d 1007 (11th Cir.2003). Regarding *Franklin* and referring to the conflation of defensive and complete preemption, the court stated that "in *Butero,* we did not follow the language in *Franklin,* and considered it *dicta.*" *Id.* at 1013 n. 7. The *Butero* court did note that "*Franklin* suggests in dicta (since the issue was not before it) that an insurance company allegedly obligated to pay benefits under a plan is not considered an ERISA entity if the complaint alleges pre-policy fraud. *See Franklin,* 127 F.3d at 1029." *Butero,* 174 F.3d at 1213 n. 3. The *Butero* court's determination that this constituted dicta does not necessarily lead to the *Ervast* court's conclusion that the method of analysis utilized by the Eleventh Circuit in determining that a federal court had jurisdiction over the case was also dicta. The Eleventh Circuit's jurisdictional analysis in *Franklin* appears to this court to turn on the question of being "related to" an ERISA plan, which is symptomatic of the conflating of defensive (29 U.S.C. § 1144) and complete preemption (29 U.S.C. § 1132). *Franklin,* 127 F.3d at 1029. Furthermore, in another pre-*Butero* case, the Eleventh Circuit found that "[a]lthough Hall's complaint purports to rely exclusively on state law, she cannot avoid federal jurisdiction if her allegations involve an area of law that federal legislation has preempted. Through ERISA, Congress specifically preempted 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ....'" *Hall,* 134 F.3d at 1065 (citing 29 U.S.C. § 1144(a) (1994) [the provision that relates to defensive, not complete, preemption]) (internal citations omitted).

Rather than exploring questions of prior panel rulings, dicta, and clarifications, because the result is the same regardless of whether the *Franklin–Hall* or the *Butero–Ervast* test is applied, the court applies both.[5] In this case, the medical coverage provided through an ERISA plan existed, then lapsed or was terminated, before being renewed. As previously discussed, *see* supra pages 1277–1280, the Plaintiffs' claims relate to an ERISA plan, thus *Franklin–Hall* preemption under 29 U.S.C. 1144(a) applies.

*Butero* and *Ervast* provide a four part test for determining whether super or complete-preemption is applicable that asks if: "a (1) relevant ERISA plan exists, under which a(2) plaintiff with standing is suing (3) an ERISA entity for (4) 'compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan.'" *Ervast,* 346 F.3d at 1013 (quoting *Butero,* 174 F.3d at 1212) (requiring (1) there be a relevant ERISA plan, that (2) the plaintiff have standing to sue under that plan, that (3) the defendant be an ERISA entity, and that the (4) complaint seek compensatory relief akin to that available under 29 U.S.C. § 1132(a); often this will be a claim for benefits due under a plan).

---

5. It appears to this court that it continues to be bound by the Eleventh Circuit decisions in *Franklin* and *Hall,* rather than *Butero* and *Ervast,* based upon the Eleventh Circuit's explanation of the prior panel rule and the role of district courts in *Morrison v. Amway Corp.,* 323 F.3d 920, 928–30 (11th Cir.2003) (finding that although the mistake was understandable, the district court should have applied the prior panel decision in *Garcia,* rather than operating under the purportedly distinguished case of *Scarfo* ).

From the previous discussion it is clear that there is an ERISA plan, under which the Plaintiff has standing to sue an ERISA entity; however, the question lingers whether the complaint seeks relief akin to that available under 29 U.S.C. § 1132(a). That statute empowers "a participant or beneficiary—to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). The Plaintiffs claims and damages are intertwined with their ERISA plan. Due to the failure of the employer to adhere to its duties to remit to the insurer money withheld from the employees, the employees seek a return of their ERISA plan payments and reimbursement for medical costs that were incurred because their employer allowed the coverage to lapse in addition to resulting damages such as emotional distress. The recovery the Plaintiffs seek is akin to that available under 29 U.S.C. § 1132(a). Thus, regardless of whether the court applies the *Butero–Ervast* test or the *Franklin–Hall* test, complete preemption applies in this case.

## V. CONCLUSION

For the reasons discussed above, the court concludes that the Defendants' Motion to Dismiss is due to be GRANTED and the claims brought by the Plaintiffs are due to be DISMISSED. The Defendants' Motions in the Alternative for Summary Judgment and to Strike to Plaintiffs' Jury Demand are due to be Denied as Moot. A separate Order will be entered in accordance with this Memorandum Opinion.

## ORDER

In accordance with the Memorandum Opinion entered on this date, it is hereby ORDERED that the Motion to Dismiss (Doc. # 3) is GRANTED, and the claims asserted by Joyce York, Linda Severson Ford, Jerva Culver, Sara Lawrence, Carmencita Hicks, and Miles Miller, III, on behalf of themselves and all other similarly situated are DISMISSED. The Defendants' Motions in the Alternative for Summary Judgment and to Strike the Plaintiffs' Demand for a Jury are ORDERED DENIED as Moot. Plaintiffs are given until April 12, 2004, to file an Amended Complaint asserting a claim or claims under ERISA, if they choose to do so.