IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 SOUTHERN DIVISION 

LAURA THOMS, individually ) 
and as personal representative of the ) 
estate of Robert Thoms, ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) Case No. 1:20-cv-00235-RAH-JTA 
 ) (WO) 
ADVANCED TECHNOLOGY ) 
SYSTEMS COMPANY, INC., et al., ) 
 ) 
 Defendants. ) 

 MEMORANDUM OPINION AND ORDER 

 This matter is before the Court on the Motions to Dismiss and to Strike, (Docs. 21, 
23), filed by Defendants Sun Life Assurance Company of Canada (“Sun”) and Advanced 
Technology Systems Company, Inc. (“ATSC”). The Plaintiff, Laura Thoms, individually 
and as personal representative of the Estate of Robert Thoms, has filed a response, (Doc. 
31), and the Defendants have filed replies, (Docs. 34, 35). 
 Upon consideration, the Court concludes that the motions are due to be granted in 
part and denied in part. 
I. APPLICABLE LEGAL STANDARDS 

 In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for 
“failure to state a claim upon which relief can be granted,” the Court construes the 
complaint in the light most favorable to the plaintiff, “accepting all well-pleaded facts that 
are alleged therein to be true.” Miyahira v. Vitacost.com, Inc., 715 F.3d 1257, 1265 (11th 
Cir. 2013) (citing Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1328 (11th Cir. 2006)). 
“[G]enerally, the existence of an affirmative defense will not support a Rule 12(b)(6) 
motion to dismiss for failure to state a claim. A district court, however, may dismiss a 

complaint on a Rule 12(b)(6) motion when its own allegations indicate the existence of an 
affirmative defense, so long as the defense clearly appears on the face of the complaint.” 
Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir. 1993) (quotation omitted). Accord 
Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015) (“A 
district court may dismiss a complaint for failure to state a claim if an affirmative defense 

appears on the face of the complaint.”). 
II. BACKGROUND 

 Laura Thoms (“Laura” or “Plaintiff”) commenced this case in the Circuit Court of 
Dale County, Alabama on January 15, 2020. (See Doc. 2-1.) After the Defendants removed 
the case to this Court on May 7, 2020, Laura filed an amended complaint, the operative 
pleading in this case, adding an additional claim under the Employee Retirement Income 
Security Act of 1974 (“ERISA”), 29 U.S.C. § 1001 et seq. (Doc. 17.) Laura’s causes of 
action arise from Sun’s denial of life insurance benefits under a group life insurance policy 
provided to Laura’s now-deceased husband, Robert, as part of his employment package 
with his new employer, ATSC. Counts I through X of the Amended Complaint allege state 

law claims for breach of contract, bad faith, negligent procurement, fraud, negligent 
misrepresentation, suppression, and fraud. Count XI requests relief under ERISA against 
Sun only. 
 According to the Amended Complaint, in late 2016, Robert accepted an offer of 
employment with ATSC that included a group life insurance policy, the premiums of which 
were to be paid by ATSC. (Doc. 17, pp. 4-6.) Robert and Laura completed and returned 
all of the pertinent paperwork for coverage. (Doc. 17, p. 5.) ATSC procured the life 

insurance coverage from Sun. (Doc. 17, p. 5.) As alleged by Laura, ATSC “was to, and 
did, pay the policy premium.” (Doc. 17, p. 6.) 
 On January 1, 2019, Robert died from septicaemia while on assignment in Kenya 
for ATSC. (Doc. 17, p. 6.) Shortly thereafter, Laura filed a claim for life insurance benefits 
with Sun. (Doc. 17, p. 6.) 

 On May 9, 2019, Sun provided Laura with notice that it was denying the claim 
because, according to Sun, Robert did not meet the policy definition of an “employee” 
since Robert “was not working on a temporary assignment outside of the United States at 
the time of his death.” (Doc. 17-6.) According to Sun, under the policy, an eligible 
“employee” means a person who was employed by ATSC “within the United States” and 

also a person who was “working on a temporary assignment outside of the United States 
for a period of twelve (12) months or less.” (Doc. 17-6.) The letter, citing the policy, also 
provided that “[i]f the Employee is working outside of the United States for more than 12 
months or other than on a temporary assignment, the Employee will not be considered an 
Employee under this Policy unless Sun Life approves the Employee in writing.” (Id.) 

 In addition to this language explaining the basis for its denial, Sun’s letter also stated 
the following in pertinent part: 
 If you disagree with our decision, you may request in writing a review of the 
 denial within 180 days after receiving this notice of denial. 
 You may submit written comments, documents, records or other information 
 relating to your claim and may request, free of charge, copies of all 
 documents, records and other information relevant to your claim. 

 We will review your claim on receipt of the written request for review, and 
 will notify you of our decision within a reasonable period of time but not 
 later than 45 days after the request has been received. If an extension of time 
 is required to process the claim, we will notify you in writing of the special 
 circumstances requiring the extension and the date by which we expect to 
 make a determination on review. The extension cannot exceed a period of 45 
 days from the end of the initial review period. If a period of time is extended 
 because the claimant failed to provide necessary information, the period for 
 making the benefit determination is tolled from the date we send notice of 
 the extension to the claimant until the date on which the claimant responds 
 to the request for additional information. The claimant will have 45 days to 
 provide the specified information. 

 If your claim is governed by ERISA, you have the right to bring a civil 
 action under the Employee Retirement income Security Act of 1974 
 (ER1SA), §502(a), following an adverse determination upon review. 

(Id. (emphasis added).) 
 Laura retained legal counsel and requested from Sun a complete copy of the group 
policy, but Sun “failed or refused to provide the policy.” (Doc. 17, p. 7.) A copy of the 
policy was not provided to Laura until approximately one year later, and only after Laura 
filed this lawsuit against Sun and ATSC. (Doc. 17, p. 7.) Until that time, Laura only had 
a copy of the Benefit Overview and Benefit Summary, neither of which identified the plan 
administrator or claims procedures. (Doc. 17, p. 8.) 
 Up to today, Sun has “charged and collected from Defendant ATSC a premium for 
Robert Thoms’ life insurance policy despite Defendant Sun Life now insisting that no 
benefits are owed under the life insurance policy because Robert Thoms was not an 
employee for purposes of the policy.” (Doc. 17, p. 8.) 
III. ANALYSIS 

A. ERISA Preemption 

 Sun and ATSC argue that Laura’s state law claims in Counts I through X of her 
operative complaint are due to be dismissed because they are preempted by ERISA. The 
Court agrees. 
 “Congress enacted ERISA to ‘protect ... the interests of participants in employee 
benefit plans and their beneficiaries’ by setting out substantive regulatory requirements for 
employee benefit plans and to ‘provid[e] for appropriate remedies, sanctions, and ready 
access to the Federal courts.’ 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a 
uniform regulatory regime over employee benefit plans.” Aetna Health Inc. v. Davila, 542 
U.S. 200, 208 (2004). As the Eleventh Circuit has explained: 
 ERISA is one of only a few federal statutes under which two types of 
 preemption may arise: conflict preemption and complete preemption. 

 Conflict preemption, also known as defensive preemption, is a substantive 
 defense to preempted state law claims. This type of preemption arises from 
 ERISA’s express preemption provision, § 514(a), which preempts any state 
 law claim that “relates to” an ERISA plan. 29 U.S.C. § 1144(a) ... 
 Complete preemption, also known as super preemption, is a judicially-
 recognized exception to the well-pleaded complaint rule. It differs from 
 defensive preemption because it is jurisdictional in nature rather than an 
 affirmative defense. Complete preemption under ERISA derives from 
 ERISA’s civil enforcement provision, § 502(a), which has such extraordinary 
 preemptive power that it converts an ordinary state common law complaint 
 into one stating a federal claim for purposes of the well-pleaded complaint 
 rule. Consequently, any cause of action within the scope of the civil 
 enforcement provisions of § 502(a) is removable to federal court. 
Connecticut State Dental Ass’n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1344 (11th 
Cir. 2009) (quotations and some citations omitted). “Although related, complete and 
defensive preemption are not coextensive: Complete preemption is narrower than 
defensive ERISA preemption, which broadly supersedes any and all State laws insofar as 
they ... relate to an ERISA plan. ERISA § 514(a), 29 U.S.C. § 1144(a). Therefore, a state-

law claim may be defensively preempted under § 514(a) but not completely preempted 
under § 502(a).” Connecticut State Dental Ass’n, 591 F.3d at 1344 (citing Cotton v. Mass. 
Mut. Life Ins. Co., 402 F.3d 1267, 1281 (11th Cir. 2005)). 
 “The [defensive] preemption provision of ERISA provides that it ‘shall supersede 
any and all state laws insofar as they may now or hereafter relate to any employment plan’ 

covered by ERISA.” Variety Children’s Hosp., Inc. v. Century Med. Health Plan, Inc., 57 
F.3d 1040, 1042 (11th Cir. 1995) (quoting 29 U.S.C. § 1144(a)). “A state law ‘relates to’ 
a covered employee benefit plan ‘if it has a connection with or reference to such a plan.’” 
Id. (quoting District of Columbia v. Greater Wash. Bd. Of Trade, 506 U.S. 125, 129 
(1992)). Defensive preemption requires dismissal of state-law claims. Butero v. Royal 

Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999). As defensive preemption 
is an affirmative defense, it is Sun and ATSC’s burden to demonstrate its applicability. See 
id. (“Defensive preemption provides only an affirmative defense to certain state-law 
claims.”). Moreover, to dismiss a claim under Rule 12(b)(6), the “affirmative defense” of 
defensive preemption must “clearly appear[] on the face of the complaint.” Fortner, 983 

F.2d at 1028. 
 Here, Laura does not dispute that the subject life insurance policy was issued as part 
of an ERISA-covered group plan. In fact, she specifically pleads a cause of action under 
ERISA. Furthermore, this Court’s review of the complaint allegations confirms that this 
policy was issued as part of an ERISA plan because the plan was established by Robert’s 
employer, ATSC, to provide beneficiaries, such as Laura, with death benefits through an 
employer-provided and paid-for insurance policy. See Butero, 174 F.3d at 1214. 

Accordingly, the Court finds that the subject insurance policy is governed by ERISA. 
 While Laura makes no real contest that her claims for breach of contract, bad faith, 
and fraud are preempted, the Court concludes these claims undoubtedly relate to an 
insurance policy issued under an ERISA plan and therefore are due to be dismissed as 
preempted by ERISA. See Butero, 174 F.3d at 1215 (state law bad faith, breach of contract, 

and fraud claims are all preempted under § 1144(a) (citing Pilot Life Ins. Co. v. Dedeaux, 
481 U.S. 41, 47-48 (1987)); Williams v. Wright, 927 F.2d 1540, 1549-50 (11th Cir. 1991); 
Variety Children’s Hosp., 57 F.3d at 1042 (“[W]here state law claims of fraud and 
misrepresentation are based upon the failure of a covered plan to pay benefits, the state law 
claims have a nexus with the ERISA plan and its benefits system.”)). 

 Laura instead argues that certain of her state law claims are not preempted by ERISA 
because they “do not arise from an ERISA plan.” (Doc. 31, p. 8.) In particular, Laura 
argues that her claims “for negligent procurement, negligent misrepresentation, and 
suppression of material fact are based on alleged shortcomings in communications between 
Plaintiff and Defendants for which ERISA provides no remedy for, and the claims are not 

brought as a beneficiary of the plan, thus, under Davila, these claims are not preempted.” 
(Doc. 31, p. 10, citing Davila, 542 U.S. at 210.) 
 In support of her argument against preemption of these procurement-related (i.e., 
point of hiring) claims, Laura relies upon the Seventh Circuit’s decision in Franciscan 
Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund, 538 F.3d 
594, 598 (7th Cir. 2008). There, the Seventh Circuit concluded that a third-party healthcare 
provider’s claims for negligent misrepresentation and estoppel against an employee benefit 

plan were not preempted under the Davila analysis because those claims arose from duties 
separate and apart from ERISA and the plan terms. Those claims were independent from 
ERISA because the third-party provider was not suing as a beneficiary or in the shoes of a 
beneficiary under the plan nor was it suing for benefits under the plan. Instead, the provider 
was suing the plan for misrepresentations made by the plan to the provider in response to 

a specific inquiry made by the provider (again, not a beneficiary). 
 Laura’s reliance on Franciscan Skemp is misplaced. (See Doc. 31, pp. 9-12, 
discussing Franciscan Skemp). In Fransiscan Skemp, the plaintiff was a third-party 
healthcare provider, not a plan beneficiary as is Laura in this case. Furthermore, the 
plaintiff in Franciscan Skemp was not seeking benefits from an ERISA plan, nor 

challenging a benefit claim denial, as is Laura in this case. Indeed, in Fransiscan Skemp, 
the plaintiff’s claims had little to do with the plan itself or a claim decision. That is not the 
set of facts presented here. 
 The Eleventh Circuit has similarly concluded that ERISA does not preempt claims 
against third-party healthcare providers such as the one found in Fransiscan Skemp. E.g., 

Connecticut State Dental Ass’n, 591 F.3d at 1346 (“healthcare provider claims are usually 
not subject to complete preemption because ‘[h]ealthcare providers ... generally are not 
considered ‘beneficiaries' or ‘participants' under ERISA.’”) (quoting Hobbs v. Blue Cross 
Blue Shield of Ala., 276 F.3d 1236, 1241 (11th Cir. 2001)). Therefore, Franciscan Skemp 
does not aid Laura here. 
 This Court is also unpersuaded by Laura’s other arguments, especially given the 
“expansive” interpretation applicable to the “related to” inquiry under ERISA. Franklin v. 

QHG of Gadsden, Inc., 127 F.3d 1024, 1028 (11th Cir. 1997). All of Laura’s claims, 
including the claims for negligent procurement, negligent misrepresentation, and 
suppression, relate to an ERISA plan, an ERISA entity, the language of a group life 
insurance policy subject to ERISA, and a benefit denial under the ERISA-governed policy. 
 Indeed, it cannot be disputed that the conduct at issue (even the “shortcomings in 

communications” as described by Laura, (Doc. 31, p. 10)), is “intertwined” with the refusal 
by an ERISA entity to pay benefits to a plan beneficiary (here, Laura). Franklin, 127 F.3d 
at 1028. Laura cannot avoid the preemption doctrine by characterizing her complaint as 
one arising under state law or that certain claims relate to misrepresentations during 
independent communications. Simply put, Laura’s state law claims have a direct 

connection to the administration of benefits under an ERISA plan and therefore they are 
completely preempted and due to be dismissed. 
B. Failure to Exhaust 
 Sun also asserts that the ERISA claim (Count XI) is due to be dismissed for failure 
to exhaust administrative remedies because Laura failed to request administrative review 

of the May 9, 2019, claim denial within 180 days of receiving it. (Doc. 22, pp. 7-10.) 
 “The law is clear in this circuit that plaintiffs in ERISA actions must exhaust 
available administrative remedies before suing in federal court.” Counts v. Am. Gen. Life 
& Acc. Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997). The Eleventh Circuit “appl[ies] the 
exhaustion requirement strictly and recognize[s] narrow exceptions only based on 
exceptional circumstances.” Perrino v. S. Bell Tel. & Tel Co., 209 F.3d 1309, 1318 (11th 
Cir. 2000). “[A] district court has the sound discretion to excuse the exhaustion requirement 

when resort to administrative remedies would be futile or the remedy inadequate, or where 
a claimant is denied meaningful access to the administrative review scheme in place....” 
Id. at 1315 (citation and quotations omitted). Additionally, a court may excuse this 
requirement when “the reason the claimant failed to exhaust is that she reasonably believed, 
based upon what the summary plan description said, that she was not required to exhaust 

her administrative remedies before filing a lawsuit.” Watts v. BellSouth 
Telecommunications, Inc., 316 F.3d 1203, 1207 (11th Cir. 2003). 
 Laura contests Sun’s exhaustion argument, stating among others that she was under 
no obligation to submit an appeal prior to filing suit under ERISA but even if she was, then 
her legal counsel’s letter of June 5, 2019, (Doc. 2-2, p. 52), and the April 2019 email 

communications, (Doc. 2-2, pp. 54-61), between Laura, ATSC and Sun concerning 
Robert’s status as an employee of ATSC, should be construed as an appeal, (Doc. 31, pp. 
15-16). 
 Here, the failure to exhaust argument is presented at the motion to dismiss stage and 
therefore the allegations in the Amended Complaint must be taken at true. As such, the 

Court must assume as true that Sun “refused or failed to provide Plaintiff with a copy of 
the policy upon request,” (Doc. 17, p. 30); that in failing to provide Laura with the policy, 
Sun prevented Laura “from knowing her obligations under the policy, ERISA and 
prevented her from exhausting her administrative remedies,” (id., p. 30); that Sun’s acts 
“denied Plaintiff a meaningful access to the review process,” (id., p. 31); and alternatively, 
that Sun “should have taken Plaintiff’s request for a copy of the policy as an appeal of Sun 
Life’s May 9, 2019 denial,” (Doc. 17, p. 30). 

 The first task for the Court is to interpret the May 9, 2019, claim denial letter, which 
is the only document given to Laura that references the claims review process. From this 
Court’s review, the claim denial letter does not clearly state that Laura must file a review 
or claim appeal before she can file a lawsuit under ERISA. Instead, the letter couches the 
review with permissive language (such as “may”) and not mandatory language (such as 

“must”). See MSPA Claims 1, LLC v. Kingsway Amigo Insurance Company, 950 F.3d 764, 
773-74 (11th Cir. 2020) (discussing the distinction between permissive words such as 
“may” with mandatory words such as “must”). 
 In Watts, supra, the Eleventh Circuit was faced with similarly vague language about 
the necessity of filing a claim appeal or review before filing suit under ERISA. There, after 

reviewing the documentation given to the plaintiff (the summary plan description), the 
Eleventh Circuit concluded that its vague language could reasonably be interpreted as 
permitting a lawsuit without exhausting her administrative remedies: 
 It seems plainer and more straightforward to simply say, as we do, that our 
 doctrine of exhaustion of administrative remedies in ERISA cases includes 
 this rule: If a plan claimant reasonably interprets the relevant statements in 
 the summary plan description as permitting her to file a lawsuit without 
 exhausting her administrative remedies, and as a result she fails to exhaust 
 those remedies, she is not barred by the court-made exhaustion requirement 
 from pursuing her claim in court. 

Watts, 316 F.3d at 1209-1210. 
 Here, given the early stage of the litigation, the favorable light that must be given to 
Laura’s complaint allegations, the permissive language in the claim denial letter, and the 
Eleventh Circuit’s opinion in Watts concerning permissive rather than mandatory 
language, the Court concludes that Sun’s motion to dismiss the ERISA claim for failure to 

exhaust administrative remedies is due to be DENIED. The Court chooses to pretermit 
discussion of the other stated grounds raised by Laura. 
C. Jury Demand 

 Laura’s Amended Complaint requests a trial by jury for Counts I through X. (Doc. 
17.) Sun and ATSC request that this jury demand be stricken. This request is due to be 
denied as moot since those claims are due to be dismissed as preempted. 
 As for the ERISA claim in Count XI, “[i]t is well-settled that plaintiffs bringing 
ERISA claims are not entitled to jury trials under ERISA because such claims are equitable 
in nature.” Rolland v. Textron, Inc., 300 F. App’x 635, 636 (11th Cir. 2008) (per curiam) 
(unpublished) (citing cases). Accordingly, Laura’s jury demand is due to be stricken to the 

extent the Amended Complaint requests a jury trial on any issue related to Count XI. 
IV. Conclusion 

 In accordance with the foregoing analysis, it is 
 ORDERED as follows: 
 (1) To the extent the Defendants move to dismiss Counts I through X of the 
 Amended Complaint, the Motions to Dismiss, (Doc. 21; Doc. 23), are 
 GRANTED and these claims are DISMISSED with prejudice as preempted 
 under ERISA; 
 (2) To the extent the Defendants move to strike the jury demands as to Counts I 
 through X of the Amended Complaint, the Motion to Strike, (Doc. 21), is 
 DENIED as moot since these claims are dismissed; 
(3) ATSC is DISMISSED as a defendant since the Plaintiff only asserted state law 

 claims against ATSC, all of which are preempted; 
(4) To the extent Sun moves to dismiss Count XI (ERISA) of the Amended 
 Complaint, the Motion to Dismiss is DENIED, (Doc. 21), and therefore this 
 claim shall remain; and, 
(5) To the extent the defendants move to strike the jury demand as to Count XI of 

 the Amended Complaint, the Motion to Strike, (Doc. 21), is GRANTED and 
 therefore the jury demand if any is hereby stricken to the extent such is made in 
 the Amended Complaint. 
DONE and ORDERED this 16th day of July 2020. 

 /s/ R. Austin Huffaker, Jr. 
 R. AUSTIN HUFFAKER, JR. 
 UNITED STATES DISTRICT JUDGE