[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 24, 2003
THOMAS K. KAHN
CLERK

—————————————————

No. 02-15769

——————————————

D. C. Docket No. 01-00564-CV-JOF-1

ROGER ERVAST,

Plaintiff-Appellant,

versus

FLEXIBLE PRODUCTS COMPANY,
RANDY PETERSON,
DOUG CRUICKSHANK,

Defendants-Appellees.

——————————————

No. 02-15941

——————————————

D. C. Docket No. 01-00564-CV-JOF-1

ROGER ERVAST,

Plaintiff-Appellee,

versus

FLEXIBLE PRODUCTS COMPANY,
RANDY PETERSON,
DOUG CRUICKSHANK,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(September 24, 2003)**

Before BIRCH and HULL, Circuit Judges, and EDENFIELD[*], District Judge.

BIRCH, Circuit Judge:

This case arose when an employee collected benefits from an Employee Stock Ownership Plan ("ESOP") at the time of his resignation from the company. The company did not disclose information to him about a potential merger during the time he made his decision to resign. The employee claims he was entitled to the information and seeks damages for the difference in stock price. The issue before us is whether he will litigate that claim in state court, where he filed the case, or in federal court, where the defendants removed it by arguing complete preemption under the Employee Retirement Income Security Act ("ERISA"), 29

---

[*] Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

U.S.C. § 1001 et seq. We conclude that the district court improperly assumed removal jurisdiction over this case because plaintiff-appellant Ervast's state law claims for breach of corporate fiduciary duty are not super preempted by ERISA. Accordingly, the district court's denial of Ervast's motion to remand the action to state court is REVERSED, and the district court is instructed to remand the case to state court. Thus, we will not reach the merits of appeal No. 02-15941 because the district court's order denying sanctions was entered without jurisdiction over the underlying case.

## I. BACKGROUND

A. The ERISA Plan

Flexible Products Company ("Flexible") stock was not publicly traded, but employees could obtain interest in the stock through the two employee incentive plans, the Employee Stock Ownership Plan ("ESOP") and the Long Term Incentive Plan ("Option Plan").[1] Pursuant to the ESOP, Flexible made contributions to a trust, which invested primarily in Flexible stock and held the assets for the benefit of participants. The ESOP trustee maintained a separate account for each participant, however, the participants did not directly own the Flexible stock as shareholders. The ESOP provided that the "separate accounts

---

[1]Ervast also directly purchased Flexible stock under the Option Plan. The provisions of the Option Plan and the disbursement thereunder to Ervast is not at issue before us.

shall not require a segregation of the Trust assets and no Participant shall acquire any right to or interest in any specific asset of the Trust as a result of the allocations provided for in the Plan." R5-57, Exh. 13 at 13.

Once a participant's employment terminated, he was entitled to a distribution commencing "not later than 120 days after the date the Participant incurs a One Year Break in Service." Id. at 25. The ESOP provided for a "put" option, which obligated either the trust or Flexible to purchase any or all of participants' shares. Id. at 27. When the participant exercised the put, the stock's price was determined by the most recent annual independent valuation of the company's stock.

B. Ervast's Resignation and the Dow Merger

Roger Ervast was employed with Flexible and participated in Flexible's ESOP and Option Plan, wherein he accumulated significant holdings during the course of his employment. On 4 October 1999, Ervast tendered his resignation to Flexible, effective 15 October. On 5 October, Flexible discovered that Ervast would be employed with a competitor, Hydroseal, promptly escorted him from company property because he had access to confidential information, and paid him two weeks' compensation in lieu of notice. Immediately following his 5 October termination, Ervast exercised his rights under the ESOP and "put" his shares under

the ESOP. On 12 October, Ervast received his payout from the ESOP and sold his stock under the Option Plan. Pursuant to Ervast's instructions, Flexible remitted a total of $448,648.10 from the Flexible Products ESOP, which was transferred directly to a rollover individual retirement account ("IRA").

During the fall of 1999, Flexible entertained the idea of selling the company to an interested buyer, Dow Chemical Company ("Dow"). In September 1999, the managers of both companies met to discuss the potential acquisition and negotiated a confidentiality agreement in exchange for Dow's agreement to make a takeout bid. On 1 October 1999, the parties entered into a confidentiality agreement and two managers entered into financial payout agreements in the event the merger was consummated. On 7 October, the senior management of both companies held a meeting, after which Dow's Senior Vice President indicated an offer to purchase Flexible was pending. On 26 October, Dow offered a price Flexible was willing to consider. On 10 November 1999, Flexible executed a letter of intent with Dow, authorizing the parties to engage in discussions about a potential merger. In January 2000, the merger was consummated and the Flexible ESOP merged into the Dow benefit plan and then ceased to exist. During the pendency of the sale, no one disclosed to Ervast the existence of the merger negotiations at the time he sold his Flexible stock. After the merger between Flexible and Dow was consummated, the 26 October 1999 date was selected as the point after which the shareholders

5

who sold their Flexible shares were to receive the higher merger price because it was the date Flexible deemed the merger negotiations became "material."

C. Procedural History

On 23 January 2001, Ervast filed suit against Flexible Products Company, Randy Peterson, and Doug Cruickshank[2] in the State Court of Fulton County, Georgia, alleging breach of fiduciary duty and negligence resulting from Flexible's failure to disclose material information that would have affected Ervast's decision to liquidate his account in Flexible stock in the ESOP. On 28 February 2001, Flexible removed the case to the federal district court in the Northern District of Georgia. On 18 July 2001, Ervast filed a motion to remand the case to state court for lack of subject matter jurisdiction. The district court denied Ervast's motion to remand, finding that his claims were "related to Defendants' administration of an ERISA plan," because the ESOP would have to be referenced to determine the value the Flexible stock. R4-43 at 5. As a result, the district court determined that Ervast's claims were super preempted by ERISA, and that federal question jurisdiction existed over Ervast's claims.[3]

---

[2] Unless required for differentiation purposes, the defendants-appellees collectively will be referred to as "Flexible."

[3] The entirety of the district court's discussion regarding ERISA preemption is contained in two orders: the order denying Ervast's motion to remand, R4-43, and then further elaborated upon in the order granting Defendant's motion for summary judgment, R6-76. We note at the outset that the district court performed a preemption analysis by only focusing on defensive preemption pursuant to ERISA § 514(a), 29 U.S.C. § 1144(a), thereafter declaring that super

6

During discovery, Flexible filed a motion for summary judgment and Ervast filed a motion for partial summary judgment. The district court awarded summary judgment to Flexible and denied Ervast's motion. Although Ervast's complaint contained allegations in the rubric of state law, the district court determined that Ervast need not amend his complaint and the court construed the complaint to state a claim for recovery of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). The district court then found that, in accordance with the undisputed facts, there was no evidence that Ervast was denied any benefits under the ESOP. Because the district court found previously that Ervast's claim was super preempted by ERISA as a claim for benefits, he could not maintain his claim for breach of fiduciary duty, despite the fact that he continually couched his argument in such terms. Nevertheless, "out of an abundance of caution," the district court addressed the breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3), and found that no fiduciary duty existed under ERISA for a plan administrator to disclose material business decisions of the company. R6-76 at 10. From this order, Ervast properly filed his notice of appeal, No. 02-15769.

D. Ervast's Deposition Dishonesty and Flexible's Motion for Sanctions

---

preemption was appropriate without performing the requisite super preemption analysis set forth in Butero v. Royal Maccabees Life Ins., 174 F.3d 1207, 1212 (11th Cir. 1999).

7

During discovery, Flexible determined that Ervast gave false testimony in his deposition regarding the date he communicated his acceptance of the Hydroseal offer. In addition, Ervast allegedly failed to produce a letter dated 27 September that Flexible argues proved the falsity of his statements, in response to the Rule 34 document requests. On these two bases, Flexible filed a motion for sanctions, which the district court denied because it found that there was no evidence that Ervast possessed the letter and that Flexible had not demonstrated a Rule 37(c) violation. Thereafter, Flexible properly filed its notice of appeal, No. 02-15941.

## II. DISCUSSION

Ervast's appeal presents two issues: the first focuses upon the denial of his motion to remand the case to state court; and, second, the grant of Flexible's motion for summary judgment and the denial of his motion for partial summary judgment. Flexible appeals the denial of its motion for sanctions against Ervast for allegedly making dishonest statements during his deposition. Because the preemption issue is a jurisdictional predicate, we first discuss whether Ervast's state law claims were super preempted by ERISA and the district court properly denied his motion to remand.[4] Because we disagree with the district court's

---

[4] Flexible argues, tardily, in its appellate brief, that there also exists diversity jurisdiction, therefore, removal was proper absent the existence of ERISA super-preemption. Although that may be the case, we decline the invitation to exercise jurisdiction on that basis

8

decision that Ervast's claims were super preempted by ERISA, the district court never had subject matter jurisdiction over the case, and Ervast's appeal of the district court's summary judgment is moot. We will not address Flexible's appeal of the district court's order denying sanctions against Ervast because it also was rendered without jurisdiction over the underlying case.

Ervast's appeal is before us because his state law claims were removed by Flexible invoking federal question jurisdiction in the form of ERISA complete (or, alternatively, super) preemption, and Ervast's motion to remand was denied. A district court's preemption analysis is reviewed de novo. Hall v. Blue Cross/Blue Shield of Ala., 134 F.3d 1063, 1064-65 (11th Cir. 1998).

Removal jurisdiction based on a federal question is governed by the well-pleaded complaint rule. Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S. Ct. 724, 725 (1914); Kemp v. Int'l Bus. Machs. Corp., 109 F.3d 708, 712 (11th Cir. 1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust. 463 U.S. 1, 11, 103 S. Ct. 2841, 2845 (1983)) (ERISA context). In plain terms, unless the face of a plaintiff's complaint states a federal question, a defendant may not remove a case

---

because Flexible had the burden to plead this basis in its notice of removal, and it did not. See Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 273 (2d Cir. 1994); Leonard v. Enterprise Rent A Car, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."); see also Edwards v. Prudential Ins. Co. of Am., 213 F. Supp. 2d 1376, 1380 n.6 (S.D. Fla. 2002) (declining to investigate the existence of diversity jurisdiction sua sponte and recognizing tension between resolving doubts in favor of remand and Congress's ability to completely preempt an area of law, i.e., in ERISA).

to federal court on this basis, even though a possible defense might involve a federal question. Kemp, 109 F.3d at 712. A narrow exception to this rule is super, or complete, preemption, existing when Congress has so fully legislated an area of law such that a plaintiff's state law claims filed in state court are "necessarily federal in character" and removable based on federal question jurisdiction.[5] Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 1546 (1987); Kemp, 109 F.3d at 712.

Whether complete preemption applies is a jurisdictional issue, which must be addressed first and is separate and distinct from whether a defendant's ERISA § 514, 29 U.S.C. § 1144, preemption defenses apply, although there might be some overlap between the two issues.[6] Land v. Cigna Healthcare of Fla., 339 F.3d 1286, 1294 at 1289-90, 1294 n.7 (11th Cir. July 30, 2003); see also Schmeling v. Nordam, 97 F.3d 1336, 1338 (10th Cir. 1996). We set forth the four-part test for determining ERISA super preemption in Butero v. Royal Maccabees Life

---

[5] Whether a plaintiff's claims are super preempted by ERISA is determined at the time of removal. Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1332 (11th Cir. 1998).

[6] Super preemption is distinguished from defensive preemption, which provides only an affirmative defense to state law claims and is not a basis for removal. Defensive preemption is not a basis for federal jurisdiction, but it does require the dismissal of state law claims. Butero, 174 F.3d at 1212. ERISA defensive preemption applies pursuant to Title 29, U.S.C. § 1144(a), which provides: "Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they . . . *relate to* any employee benefit plan . . . ." (emphasis added). If a state law claim is defensively preempted by ERISA, it is dismissed from the suit.

Insurance Co., 174 F.3d 1207, 1212 (11th Cir. 1999): a (1) relevant ERISA plan exists, under which a (2) plaintiff with standing is suing (3) an ERISA entity for (4) "compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan."

Ervast urges us to reverse the district court's denial of his motion to remand because the district court did not thoroughly consider whether his claims were super preempted under Butero, but instead it authorized removal on the basis of defensive preemption, an impermissible basis. Metropolitan Life, 481 U.S. at 63, 107 S. Ct. at 1546 ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."); Butero, 174 F.3d at 1212. Further, Ervast argues that the nature of his claim did not fulfill the first, second, and fourth prongs of the Butero analysis. First, we hold that the district court erred in deciding the super preemption issue by applying the defensive preemption analysis.[7] Second, we hold that Ervast's claims did not seek

---

[7] The district court's confusion is not unfounded. There are seemingly two approaches employed by the circuit courts resulting from similar confusion: that is, whether the § 1144 preemption provision in ERISA is a component, or prerequisite, of the complete preemption analysis. See Tovey v. Prudential Ins. Co. of Am., 42 F. Supp. 2d 919, 923-24 (W.D. Mo. 1999) (noting the split between circuits that applied a two prong analysis and those that did not require defensive preemption as a prerequisite to complete preemption). Some circuits require defensive preemption as a prerequisite to complete preemption, thus applying a two-step analysis, while other circuits do not. Tovey listed our circuit as applying the two-step analysis, citing Franklin v. QHG of Gadsden, Inc., 127 F.3d 10924, 1028 (11th Cir. 1997) ("ERISA 'completely preempt[s]' the area of employee benefit plans and thus converts state law claims into federal

11

"compensatory relief akin to that under § 1132" under the fourth prong, and thus

we need not reach the arguments concerning the remaining three prongs of the

Butero analysis.  Accordingly, Ervast's claims were not super preempted.

State law claims are completely preempted by ERISA, and thus removable

to federal court as federal claims pursuant to the Butero analysis, if they state a

claim seeking the relief "akin to" that provided for in § 1132(a).  Section

1132(a)(1)(B) permits a civil action by a participant or beneficiary "to recover

---

claims when the state law claim is preempted by ERISA and also falls within the scope of the civil enforcement section of ERISA, Section [1132(a)]."); however, in Butero, we did not follow the language in Franklin and considered it *dicta*.  Butero set forth the proper complete preemption analysis and made no mention that defensive preemption was a prerequisite.  Butero, 174 F.3d at 1212.

The en banc Fifth Circuit recently in Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. July 10, 2003) (en banc), disentangled the analyses and held them to be distinct inquiries, and overruled its prior precedent that merged the two.  It refused to reach the issue of defensive preemption because it is a substantive, and not jurisdictional, issue, and if a state law claim is not completely preempted because it seeks relief available under § 1132(a), then it is inappropriate to decide the substantive issue of defensive preemption without proper jurisdiction.  Id. at 439-40.

Defensive preemption may not be a prerequisite for complete preemption, but they usually co-exist.  Naturally, if a claim were for the recovery or clarification of benefits under an ERISA plan, then the claim will "relate to" the plan.  There are, however, statutory exceptions to ERISA preemption under § 1144, i.e., state securities and insurance laws, and thus a state securities claim might appropriately be completely preempted, but defensive preemption may not apply.  29 U.S.C. § 1144(b)(2)(A) (saving state insurance, banking, or securities laws from preemption); see Arana, 338 F.3d at 439-40.  To explicitly require defensive preemption under § 1144 would permit a loophole for state law claims that are excepted from defensive preemption to avoid appropriate complete preemption, thus denying a party federal jurisdiction.  This is not to say that the "relate to" analysis and the law interpreting such can not inform the issue facing a court that must determine whether state law claims are completely preempted, however, complete preemption is not *dependent* on the existence of defensive preemption.  Moreover, a decision regarding complete preemption does not decide the issue of defensive preemption.  As we stated, supra note 7, defensive preemption is a substantive issue that must be decided by a court with competent jurisdiction.

12

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." If a state court plaintiff's state law claim seeks this relief, then the plaintiff is deemed to have brought a federal claim, the state law claims are thus converted to a federal claim under § 1132, and the case is removable via federal question jurisdiction.

Not all state law claims are completely preempted and may be subject to ERISA defensive preemption only. What is often confused is that these are two different questions. The issue of complete preemption is jurisdictional; meaning, if the claims are not completely preempted, they are not properly removed and must be remanded to state court. Land, 339 F.3d at 1290. The defensive preemption issue, however, is substantive; therefore, either in state or federal court, when a state law claim is brought, the defendant may raise the defense that the claims are preempted by ERISA under § 1144, and should be dismissed. Super preemption, on the other hand, *recharacterizes* the state law claim into a federal claim under § 1132, so long as the other three Butero elements are present.

That being said, if Ervast's state law claim for breach of fiduciary duty is actually (1) a claim for recovery of benefits due under the terms of the plan, (2) a claim seeking to enforce his rights under the terms of the plan, or (3) a claim for clarification of future benefits under the terms of the plan; it is construed as a

13

federal civil action under § 1132(a), is completely preempted, and confers federal question jurisdiction. See Land, 339 F.3d at 1290. Although state-law claims involving the denial of employee benefits invariably yield to ERISA substantive law, the presence of an ERISA plan within the facts of a case does not, on its own, automatically subject the litigant to federal question jurisdiction. Instead, along with the other three elements of the Butero super preemption analysis, the court evaluating federal question jurisdiction must parse the elements of the claim to ascertain whether the claim, and not just the factual scenario, states a claim resonant of recovery under § 1132. In Land, we recognized our past precedent indicating that § 1132(a)(1)(B) claims "essentially are contract claims." 339 F.3d at 1293 (citing Harrison v. Digital Health Plan, 183 F.3d 1235, 1241 (11th Cir. 1999)).

At the time of removal, Ervast's complaint alleged four counts: breach of fiduciary duty, attorney's fees and expenses, punitive damages, and an alternative count of negligence. In essence, Ervast claims that he is entitled to the difference in the price he received for his ESOP shares and post-merger announcement price of the shares because the defendants, as the majority shareholder and officers/significant shareholders, had the fiduciary duty to inform him, as a minority shareholder, of the merger discussions with Dow and they did not. If he had access to this information, Ervast maintains that he would have postponed his

14

resignation or put option in order to realize the post-merger share price. Ervast does not contend that the valuation for the shares he received under the ESOP was improper under the terms of the ERISA plan. Rather, he hinges defendants' liability on a failure to communicate material information to which he allegedly was entitled as a shareholder and affected his individual decision to resign and cash out his participant account of shares under the ESOP.

The relief Ervast seeks, and the basis upon which that relief is sought, is not akin to that available under § 1132(a). Ervast's allegations do not in any way involve a clarification of his rights, nor is he seeking to enforce his rights *under the terms* of the ESOP. Ervast does not dispute the distribution he received as being contrary to the terms of the plan, or that under its terms he should have received more than he did. Thus, neither the second nor third types of claims for recovery under § 1132(a) are applicable here.

The first type of § 1132(a) claim - for recovery of benefits due under the terms of the ERISA plan - is what the district court construed Ervast's state law claim to be seeking. However, that assessment was incorrect. In its summary judgment order, the district court construed Ervast's state law claims as brought under § 1132 for recovery of benefits and the court addressed the merits of Flexible's summary judgment motion. The court determined that, even though it liberally construed Ervast's unamended complaint, he could not maintain a claim

15

for a denial of benefits under § 1132 because the valuation of the stock was consistent with the terms of the ESOP.[8] This conclusion exposes the preexisting error by the district court - Ervast's claim does not contest his distribution under the terms of the ESOP. Instead, he claims a right to information that, if he possessed, would have changed his decision making process with regard to the time he sought to collect his benefits. Ervast also does not claim entitlement to this information under the terms of the ESOP; rather, his claim is based on his status as minority shareholder and the duty owed him by the majority shareholders.

Although Ervast was a participant[9] in the ESOP and Flexible was the plan sponsor, we are not considering a claim casting the parties in these roles. Instead, the breach of corporate fiduciary duty is premised on the parties' roles of majority

---

[8] In addition, the court observed that Ervast could not simultaneously sustain a claim for benefits and a claim for breach of fiduciary duty, pursuant to 29 U.S.C. § 1104, because they are duplicative. R6-76 at 7 (citing Harrison, 183 F.3d at 1237 n.1). Tellingly, when the district court also assessed whether Ervast could pursue his claim under ERISA for a breach of fiduciary duty, the district court found that neither ERISA nor circuit law required Flexible, as a plan administrator, to disclose discussions about a potential merger, because the merger plans "did not pertain to the ESOP itself, but rather to a potential business decision unrelated to the administration of the trust. . . . [A]ny disclosure duty found in § 1104 extends only to information about the ERISA plan or its administration, and not to general business decisions." Id. at 12. In actuality, Ervast's claim is not really that Flexible, as a plan administrator, owed him the duty, but Flexible, as majority shareholder, owed him the duty to disclose information about the potential merger. But, by attempting to force a square peg in a round hole, the district court reached the inconsistent conclusion that Ervast's state law claims were preempted by ERISA, however, his claim could not be sustained under ERISA because it was for a breach of fiduciary duty unrelated to the administration of the plan.

[9] The parties dispute whether Ervast was a participant at the time of removal. We are not addressing that issue before us, however, for the purpose of our analysis we are presuming that, at one time, Ervast was a participant in the ESOP.

16

and minority shareholders. The state law action does not implicate the traditional ERISA roles, nor does it call into question the administration of the ESOP. See Hook v. Morrison Milling Co., 38 F.3d 776, 784 (5th Cir. 1994) ("ERISA's preemptive scope may be broad but it does not reach claims that do not involve the administration of plans, even though the plan may be a party to the suit or the claim relies on the details of the plan."). Accordingly, we hold that Ervast's state law claim for breach of corporate fiduciary duty is not completely pre-empted because it does not seek compensatory relief "akin to" that available under § 1132.[10]

To divest a state court of jurisdiction and a plaintiff of his chosen forum in this situation by complete preemption, would overreach the scope of actions Congress sought to bring within the purview of ERISA civil enforcement actions. Ervast's claim is not addressing whether he received what money he was entitled to under the ESOP, but rather whether he was entitled as a minority shareholder to the information Flexible, as the majority shareholder, possessed. Converting his

---

[10] Although we conclude that the particular type of "failure-to-inform" claim asserted by Ervast here sounds in state law and is not preempted, we note, however, that an ERISA participant has a right to information and that a failure-to-inform claim may lie against an ERISA administrator. See Krohn v. Huron Mem'l Hosp., 173 F.3d 542, 548-51 (6th Cir. 1999) (an ERISA fiduciary with knowledge of a beneficiary's status and situation has an affirmative duty to communicate material facts to the beneficiary which will allow for an informed decision); Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300-01 (3rd Cir. 1993) (an ERISA fiduciary's duty to provide "complete and accurate information to its beneficiaries" "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.").

17

state law claims derived from state law duties to an ERISA civil action subject to complete preemption would serve to insulate majority shareholders from minority shareholders seeking to exercise their rights by the coincidental nature in the means by which those minority shares were obtained, an ERISA plan.

We are not confronted with an "artful pleader" that has found a way around ERISA preemption by couching the terms of his claim for benefits in a creative way. See Englehardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1354 n.11 (11th Cir. 1998). Simply put, Ervast claims that Flexible Products Co., Randy Peterson, and Doug Cruickshank, as the majority shareholder and corporate officers, had the fiduciary duty to tell him, as a minority shareholder, that it was considering a merger with Dow. Georgia corporate law permits this direct action by a minority shareholder, apparently even if those shares are held in a trust form, as were Ervast's in the ESOP. Next Century Communications Corp v. Ellis, 171 F. Supp. 2d 1374, 1381 (N.D. Ga. 2001); see O.C.G.A. § 10-5-2(26) (defining "security" broadly).[11] Whether the defendants were required to tell Ervast about the merger and whether it was a breach of their fiduciary duty as majority shareholder and corporate officers because they did not, can only be answered by Georgia state law. Their duty to him, if any, exists by nature of state law only. As the district court

---

[11] We are not in the position to evaluate the feasibility of Ervast's claim or his relative chance of success in state court. Our sole concern is the nature of the state law claim and whether it is completely preempted by ERISA.

18

noted, there was no duty under ERISA that the defendants to inform him of the pending merger because the fiduciary relationship between a majority and minority shareholders is not one derived from ERISA. See Lupo, 28 F.3d at 273-74 (deciding that a plaintiff's state law claims for professional malpractice, breach of fiduciary duty, and intentional infliction of emotional distress against employer of psychotherapist which had contracted with plaintiff's employer to provide services in connection with employee health benefit plan governed by ERISA, did not state a claim arising under ERISA for purpose of federal question jurisdiction). That is because the claim that Ervast brought against the defendants is not an ERISA civil action for the recovery of benefits due under the terms of the plan, but grounded in state law. Ervast originally sought his answer in state court and, in our view, it is the state court, and not the federal court, that has the jurisdiction and authority to give it to him. Ervast's claim was not seeking compensation akin to that available under § 1132, it was not super preempted by ERISA, and it was improperly removed to federal court on that basis. Accordingly, the district court's denial of Ervast's motion to remand is reversed and the district court is instructed to remand the case to State Court of Fulton County, Georgia.[12]

### III. CONCLUSION

---

[12] Because the action is remanded to state court for lack of federal question jurisdiction, the district court's order granting Flexible's motion for summary judgment is VACATED.

19

Ervast's state law action was improperly removed to federal court because his state law claims were not completely preempted by ERISA, even though his minority shareholder rights derived from shares held in an ERISA plan. The duties owed him by Flexible and allegedly breached are grounded in state law and not ERISA. The claims did not seek relief akin to that available under § 1132 and could not form the basis of removal under federal question jurisdiction. Accordingly, the district court's denial of Ervast's motion to remand is REVERSED and the district court is instructed to remand the case to the State Court of Fulton County, Georgia. Flexible's appeal is moot because the district court's decision was rendered without jurisdiction.

**REVERSED WITH INSTRUCTIONS.**