**Julie Ann Hamrick HURSEY, Plaintiff,**

v.

**Sidney B. HURSEY, Defendant.**

**Civil Action No. 3:09–CV–079–JTC.**

United States District Court,
N.D. Georgia,
Newnan Division.

Feb. 12, 2010.

---

Alvah O. Smith, Levine & Smith, Jack M. Martin, Benefits Law Group, Atlanta, GA, for Plaintiff.

Barry B. McGough, Elizabeth Alford Beskin, Warner Mayoue Bates & Nolen, Atlanta, GA, for Defendant.

## *ORDER*

JACK T. CAMP, District Judge.

Pending before the Court is Defendant's Motion to Add Party [# 5] and Plaintiff's Motion to Remand to State Court [# 12]. Plaintiff initiated this action in the Superior Court of Fayette County, Georgia as a Motion for Contempt of a Qualified Domestic Relations Order ("QDRO"). Defendant removed the action to this Court pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and moved to join the Pension Benefit Guaranty Corporation (the "PBGC") as a party. Plaintiff then moved to remand this case to the Superior Court. The Court **DENIES** the Motion to Add Party [# 5] and **GRANTS** the Motion to Remand to State Court [# 21].

### I. Factual Background

Plaintiff Julie Ann Hamrick Hursey and Defendant Sidney Hursey were husband and wife; they divorced in 2004. (Pl.'s Mot. for Contempt at ¶ 1; Def's Answer at ¶ 1.) On December 30, 2004, the Superior Court of Fayette County entered a QDRO incorporating the parties' Settlement Agreement. (Pl.'s Mot. for Contempt at ¶¶ 1, 3; Def's Answer at ¶¶ 1, 3.)

At all times relevant to this dispute, Defendant was an airline pilot employed by Delta Air Lines, Inc. ("Delta"). As a pilot for Delta, Defendant participated in several retirement plans Delta offered to its pilots. These retirement plans include the Delta Pilots Retirement Plan, which is a tax-qualified, defined benefit pension

subject to ERISA. *See generally In re Delta Air Lines, Inc.,* No. 06 Civ. 9418, 2006 WL 3592334, at *1 (S.D.N.Y. Dec. 11, 2006). In addition, pilots received pension benefits from related non-qualified plans, such as the Delta Pilots Supplemental Annuity Plan and the Delta Pilots Bridge Plan. *See Id.* Pursuant to the terms of the Settlement Agreement, Plaintiff received one-half of Defendant's interest in the Delta Family–Care Savings Plan, the Delta Pilots Retirement Plan, the Delta Pilots Supplemental Annuity Plan, the Delta Pilots Bridge Plan, and the Delta Pilots Money Purchase Plan. (Settlement Agreement ¶ 8, Oct. 29, 2004.)

Less than a year after their divorce, Delta filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. During the course of the bankruptcy, the Air Line Pilots Association ("ALPA") and Delta reached a Letter of Agreement ("LOA # 51") altering the terms of a collective bargaining agreement regarding pay, benefits, and work rules. One of the terms of LOA # 51 was that the ALPA agreed not to oppose any voluntary, involuntary or distress termination of the Delta Pilots Retirement Plan or the termination of the Delta Pilots Bridge Plan or the Delta Pilots Supplemental Annuity Plan. In addition, LOA # 51 provided that Delta would terminate the Money Purchase Pension Plan and distribute its assets to the participants.

Pursuant to LOA # 51, Delta provided the ALPA with a general unsecured claim in the amount of $2.1 billion. In addition, Delta agreed to issue $650 million in senior unsecured notes upon the termination of the Delta Pilots Retirement Plan. Delta then moved the Bankruptcy Court for approval of LOA # 51. (Debtors' Mot., No. 05–17923, Bankr.S.D.N.Y., filed May 9, 2006.) The Pension Benefit Guaranty Corporation [1] (the "PBGC") objected to Delta's motion. (Objection of PBGC at 2, No. 05–17923, Bankr.S.D.N.Y., filed May 24, 2006.) Specifically, PBGC objected to LOA # 51 because it allowed Delta to seek a distress termination of the Delta Pilots Retirement Plan and compensated its active pilots for the unfunded benefits under the Delta Pilots Retirement Plan by giving them $650 million in notes and a $2.1 billion unsecured claim. (Objection of PBGC at 2.) PBGC argued that ERISA assigned any claim for a pension plan's total under funding exclusively to it. (*Id.* at 2–3.)

The Bankruptcy Court overruled PBGC's Objection and ordered that, as set forth in LOA# 51, the ALPA shall not oppose the termination of the Delta Pilots Retirement Plan or the other contribution retirement plans at issue. *In re Delta Air Lines, Inc.,* Case No. 05–17923, slip op. at 3–4 (Bankr.S.D.N.Y. May 31, 2006). In addition, the Bankruptcy Court allowed ALPA to receive a $2.1 billion general non-priority unsecured claim in the bankruptcy proceedings (the "ALPA Claim"), as well as $650 million in notes issued by Delta upon the termination of the Delta Pilots Retirement Plan (the "ALPA Notes"). *Id.* at 4–5. PBGC appealed the Bankruptcy Court's Order to the United States District Court for the Southern District of New York. (Notice of Appeal, No. 05–17923, Bankr.S.D.N.Y., filed June 7, 2006.)

---

**1.** The PBGC is the federal governmental agency that administers the pension plan termination insurance program established by Title IV of ERISA. When a pension plan covered by Title IV terminates with insufficient assets to pay all of its promised benefits, the PBGC becomes the statutory trustee of the pension plan and pays plan participants their pension benefits, subject to the statutory limitations. *See* 29 U.S.C. §§ 1321, 1322, 1344, 1361.

After PBGC appealed the Bankruptcy Court's Order, it reached a settlement with Delta resolving the issues regarding the termination of the Delta Pilots Retirement Plan. (Settlement Agreement, Dec. 4, 2006.) Pursuant to the terms of this Settlement Agreement, PBGC agreed to complete the distress termination of the Delta Pilots Retirement Plan as soon as practical with an effective termination date of September 2, 2006. (*Id.* at ¶ 3.) PBGC received a pre-petition, general, non-priority unsecured claim against Delta in the amount of $2.2 billion. (*Id.* at ¶ 6(a).) In addition, the proposed plan of reorganization provided for the distribution to PBGC of $225 million in senior unsecured notes. (*Id.* ¶ 1.) Finally, PBGC agreed to withdraw with prejudice its appeal of the Bankruptcy Court's May 31, 2006, Order approving LOA # 51. (*Id.* ¶ 9.) The Bankruptcy Court approved the Settlement Agreement. *In re Delta Air Lines, Inc.,* 359 B.R. 468, 471 (Bankr.S.D.N.Y.2006). After the termination of the Delta Pilots Retirement Plan, PBGC became the Plan's statutory trustee. Delta also terminated the Delta Pilots Bridge Plan, and the Delta Pilots Supplemental Annuity Plan. (Pl.'s Mot. For Contempt at ¶ 4; Def's Answer at ¶ 4.) These plans, however, are not covered by PBGC's pension plan termination insurance program. *See* 29 U.S.C. §§ 1002(35), 1321(a).

Meanwhile, the ALPA allocated the ALPA Claim and ALPA Note to the pilots. (Pl.'s Mot. for Contempt at ¶¶ 6, 7.) Defendant received "cash and a contribution" to his account in the Delta Family Care Savings Plan for his share of the ALPA Claim. (Def.'s Ans. at ¶ 6.) In addition, Defendant received "cash and a contribution" to his account under the Delta Pilots Defined Contribution Plan for his share of the ALPA Note. (*Id.* at ¶ 7.) Plaintiff contends that the amount Defendant received for the ALPA Claim and Note represent Defendant's share of the consideration received by current Delta pilots, including Defendant, for agreeing to surrender rights and benefits under the pension plans. (Pl.'s Mot. for Contempt at ¶ 8.) Because the QDRO divided Defendant's pension benefits between him and Plaintiff, Plaintiff contends that she is entitled to a proportionate share of the amount of the ALPA Claim and Note paid to Defendant. (*Id.* at ¶¶ 8–9.)

After Defendant declined to provide Plaintiff with any of these funds, Plaintiff filed a Motion for Contempt in the Superior Court of Fayette County, the Court that entered the QDRO. Defendant removed the action to this Court and moved the Court to add PBGC as a party. Plaintiff then moved to remand the case to the Superior Court.

## II. Analysis

### A. Motion to Add Party

█ Defendant moves pursuant to Rule 19 of the Federal Rules of Civil Procedure to add PBGC as a party to this action. Rule 19 provides that a court should join a party where it cannot grant complete relief to the existing parties without joining the person, or where the non-party claims an interest relating to the subject of the action and is situated so that disposing of the action in its absence impairs the non-party's ability to protect its interest. Fed. R.Civ.P. 19(a). Defendant contends that PBGC should be joined in this action because it is the party responsible for determining and paying benefits under the Delta Pilots Retirement Plan, and, thus, Plaintiff cannot obtain the relief she requests without joining PBGC as a defendant.

As PBGC states in response to Defendant's motion to add it as party, the Court can grant the relief Plaintiff seeks without joining PBGC. Unlike the cases relied upon by Defendant, this is not an action against a plan administrator for recovery

of benefits. *See generally Preite v. Charles of the Ritz Group, Ltd. Pension Plan,* 471 F.Supp.2d 1271, 1280–81 (M.D.Fla.2006) (action by a plan participant for recovery of policy benefits was proper against the entity with the authority under the plan to effect payment). Plaintiff does not request an accounting of her benefits due under the remaining funds in the Delta Pilots Retirement Plan or a payment of pension benefits from PBGC. Rather, Plaintiff seeks to recover funds in the sole possession of Defendant. These funds were not paid from either the PBGC or an ERISA plan, but by Delta as a part of the bankruptcy reorganization. In short, Plaintiff seeks no relief from the Delta Pilots Retirement Plan or PBGC, and joinder is not required under Rule 19(a)(1)(A).

Moreover, PBGC does not have an interest in the subject of this action—the share of the ALPA Claim and Note that ALPA allocated to Defendant. A ruling by the Court on whether Plaintiff is entitled to any of the funds in Defendant's possession under the terms of the QDRO will not bind PBGC or impact its determination of benefits under the Delta Pilots Retirement Plan and Title IV of ERISA. If PBGC determines that participating in this action is necessary to ensure that the Court limit its findings to the QDRO, it may do so by requesting leave to file an amicus curiae brief with the Court. Accordingly, the Court **DENIES** Defendant's Motion to Add Party [# 5].

### B. Motion to Remand

■■■ Federal courts are courts of limited jurisdiction, and they may only hear cases where the Constitution or the United States Congress authorizes them to do so. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). Removal of a case to federal court is only proper if the plaintiff could have originally brought the case in federal court. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Dial v. Healthspring of Ala., Inc.,* 541 F.3d 1044, 1047 (11th Cir.2008). Where, like here, a defendant removes a case pursuant to 28 U.S.C. § 1441(b), the action must be based on a claim or right arising under federal law. *Dial,* 541 F.3d at 1047; *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003). The burden is on Defendant, as the party removing the case, to demonstrate the existence of federal jurisdiction. *Kirkland v. Midland Mortg. Co.,* 243 F.3d 1277, 1281 n. 5 (11th Cir.2001).

■■■ Typically, in order to determine whether a claim arises under federal law, courts "examine the 'well pleaded' allegations in the complaint and ignore potential defenses." *Anderson,* 539 U.S. at 6, 123 S.Ct. at 2062; *Ervast v. Flexible Products Co.,* 346 F.3d 1007, 1012 (11th Cir.2003) ("In plain terms, unless the face of a plaintiff's complaint states a federal question, a defendant may not remove a case to federal court on this basis, even though a possible defense might involve a federal question.") An exception to this general rule is where a federal law displaces the state law cause of action through "complete preemption," thereby furnishing federal subject matter jurisdiction.[2] *Anderson,* 539 U.S.

---

2. In addition to complete preemption, a defendant can plead "defensive preemption" as an affirmative defensive to state law claims. *Butero,* 174 F.3d at 1212. Defensive preemption, which supersedes any state laws insofar as the relate to an ERISA plan, is broader than complete preemption. *Cotton v. Massa-*

chusetts Mut. Life Ins. Co., 402 F.3d 1267, 1281 (11th Cir.2005). Defensive preemption, however, does not furnish subject matter jurisdiction and cannot be the basis of federal jurisdiction on removal. *Id.; Butero,* 174 F.3d at 1212; *Ervast,* 346 F.3d at 1013 n. 6.

at 6, 123 S.Ct. at 2062; *Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1211 (11th Cir.1999); *Ervast,* 346 F.3d at 1012. Courts also refer to the doctrine of complete preemption as "super preemption." *Butero,* 174 F.3d at 1211. If there is complete preemption, the federal district court re-characterizes a plaintiff's state law claims as claims arising under ERISA. *See Alcorn v. Appleton,* No. 1:09cv1314, 2009 WL 2997730, at *3 (N.D.Ga. Sept. 15, 2009) (Forrester, J.) Although Plaintiff's Complaint asserts only state law causes of action, Defendant contends that the claims are subject to complete preemption under ERISA. ERISA completely preempts a plaintiff's state law claims only when a plaintiff seeks relief that is available under 29 U.S.C. § 1132(a). *Id.* at 1212. In *Butero,* the United States Court of Appeals for the Eleventh Circuit set out a four part test for determining if the doctrine of complete preemption applies to a plaintiff's state law claim. *Id.; Ervast,* 346 F.3d at 1013. "First, there must be a relevant ERISA plan. Second, the plaintiff must have standing to sue under the plan. Third, the defendant must be an ERISA entity. Finally, the complaint must seek compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan." *Butero,* 174 F.3d at 1211 (internal citations omitted); *see also Jones v. LMR Intern., Inc.,* 457 F.3d 1174, 1178 (11th Cir.2006); *Alcorn,* 2009 WL 2997730 at *3.[3] Although Defendant contends that Plaintiff's claims are subject to complete preemption and carries the burden of demonstrating the existence of federal jurisdiction, *Kirkland,* 243 F.3d at 1281 n. 5, he does not refer to

the Eleventh Circuit's four part test or demonstrate how this case satisfies these requirements. Upon an independent review of Plaintiff's claims, Defendant cannot satisfy each of the four requirements. Both parties concede that the Delta Pilots Retirement Plan is an ERISA plan[4] and that Plaintiff, as a result of the QDRO, is a plan beneficiary with standing to sue under the plan. *See Boggs v. Boggs,* 520 U.S. 833, 846–47, 117 S.Ct. 1754, 1763, 138 L.Ed.2d 45 (1997). Moreover, as a beneficiary of an ERISA plan, Defendant is an ERISA entity. *See Morstein v. Nat'l Ins. Servs., Inc.,* 93 F.3d 715, 722 (11th Cir. 1996) ("ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan.").

■ The Complaint, however, does not seek compensatory relief akin to that available under § 1132(a). Section 1132(a) provides that a plan participant or beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to qualify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(a)(1)(B). As previously discussed, Plaintiff did not bring this action to recover benefits due under the terms of the Delta Pilots Retirement Plan, to enforce her rights under the Plan, or to qualify her rights to any future benefits under the Plan. Instead, Plaintiff seeks to recover funds paid by Delta to the ALPA pursuant to LOA #51. These funds were not paid as benefits of an ERISA plan, but as part of a comprehensive negotiated settlement between the ALPA and Delta regarding the restructuring of the terms of

---

3. Although Plaintiff contends that this action is not subject to preemption because 1144(b)(7) exempts qualified domestic relations orders from ERISA preemption, this provision applies to defensive preemption pursuant to Section 1144(a). *See* 29 U.S.C. § 1144(b)(7).

4. Defendant fails to address whether the remaining plans at issue are ERISA plans. Because Defendant cannot satisfy the forth requirement, however, the Court need not address this issue.

the collective bargaining agreement regarding pay, benefits, and work rules between Delta and its pilots.

One aspect of LOA #51 was that the ALPA agreed not to oppose the distress termination of the Delta Pilots Retirement Plan or the termination of the Delta Pilots Bridge Plan and the Delta Pilots Supplemental Annuity Plan. Although related to an ERISA plan, this claim involves the interpretation of a QDRO under state law, not a claim for benefits due under an ERISA plan pursuant to Section 1132(a). If, as Plaintiff contends, these funds were paid in consideration for surrendering rights and benefits that Plaintiff and Defendant divided pursuant to the QDRO, then the Superior Court will have to determine whether Defendant breached the terms of the QDRO by failing to turn over any portion of those funds to Plaintiff. Plaintiff, however, will still receive her portion of Defendant's retirement benefits under the Plan, irrespective of whether the Superior Court finds that the funds Defendant received from the ALPA come within the assets divided by the QDRO. Because the relief sought by Plaintiff is not akin to that available under § 1132(a), Plaintiff's Motion for Contempt is not subject to complete preemption under ERISA. Accordingly, this Court lack subject matter jurisdiction to hear these claims. The Court **GRANTS** Plaintiff's motion to Remand [# 12].

### III. Conclusion

The Court **DENIES** the Motion to Add Party [# 5] and **GRANTS** the Motion to Remand to State Court [# 21]. The Court **DIRECTS** the Clerk to **REMAND** this case to the Superior Court of Fayette County, Georgia.