**Pedro J. POLANCO–BEZARES et al., Plaintiffs,**

v.

**FIDDLER GONZALEZ & RODRIGUEZ, P.S.C., et al., Defendants.**

**Civil No. 12–1604 (ADC).**

United States District Court, D. Puerto Rico.

Aug. 12, 2013.

---

**20.** *Smith,* 538 U.S. at 97, 123 S.Ct. 1140.

**21.** Mass. Gen. Laws ch. 6, § 177.

Harry Anduze–Montano, Jose A. Mor-ales–Boscio, Harry Anduze Montano Law Office, San Juan, PR, for Plaintiffs.

Jose A. Acosta–Grubb, Maria Isabel Rey–Cancio, Fiddler Gonzalez & Rodri-guez, P.S.C., San Juan, PR, for Defen-dants.

## OPINION AND ORDER

AIDA M. DELGADO–COLÓN, Chief Judge.

This case arises from a pension plan crisis at Fiddler González & Rodríguez P.S.C., ("FGR"), a law firm based in San Juan, Puerto Rico. *See generally* **ECF No. 1–2.** Plaintiffs Pedro J. Polanco–Bezares ("Polanco"), Sylvia Pagán–Casañas and their conjugal partnership (collectively, "plaintiffs") filed the above-captioned case in the Court of First Instance of Puerto Rico, alleging, *inter alia,* that FGR breached its fiduciary duties in managing FGR's pension plan, failed to provide ben-efits under FGR's medical plan, and, once the pension plan was terminated, breached an agreement providing for alternative compensation. *Id.* On July 27, 2012, FGR filed a notice of removal. **ECF No. 1.** Pending before the Court are plaintiffs' Motion to Remand this action to the Court of First Instance of Puerto Rico, FGR's opposition and plaintiffs' reply. **ECF Nos. 12, 25, 32.** The issue in dispute is whether plaintiffs' complaint presents a federal question. Finding that it does, plaintiffs' motion (**ECF No. 12**) is **DENIED.**

## I. Factual Background

The facts taken from the pleadings, which are assumed to be true, are as follows:

On August 15, 1977, Polanco began working as an attorney at FGR, a Puerto Rico law firm. **ECF No. 1–2** at ¶¶ 1.1, 1.2, 2.1. Polanco became a proprietary partner in 1987. *Id.* By 2005, Polanco set his sights on obtaining a judicial appointment. *Id.* at ¶ 2.9.

FGR was managed by at least three committees: the Executive Committee, the Practice Committee and the Pension Committee (the "governing committees"). *See id.* at ¶¶ 2.3, 2.4, 2.10. As employee benefits, FGR offered Polanco and the other proprietary partners a medical plan[1] and a pension plan. *Id.* at ¶ 2.6. FGR's Pension Committee supervised the pension plan and the Millman Company ("Millman") administered the pension plan. *Id.* at ¶¶ 2.7, 2.9. The Pension Committee told Polanco and the proprietary partners that the pension plan was fully funded. *Id.* at ¶¶ 2.7–2.8.

In December of 2005, the governing committees told Polanco and the other proprietary partners that their annual contributions to the pension plan had dramatically increased due to new federal laws. *Id.* at ¶ 2.10. The governing committees informed Polanco and the proprietary partners that they felt it necessary to freeze the pension plan on January 1, 2006. *Id.* Thereafter, FGR hired Watson Wyatt to explore alternative methods to keep the pension plan afloat. *Id.* at ¶ 2.11. In a meeting, a Practice Committee member suggested the possibility of FGR having to apply for a $12 million loan to fund the pension plan. *Id.*

In August and September of 2006, Polanco and the proprietary partners learned several disconcerting facts about the pension plan[2] *Id.* at ¶ 2.13. The pension plan was underfunded by approximately $15 million because of the governing committees' excesses. *Id.* Apparently, the governing committees authorized extravagant expense accounts, bonuses, and superfluous expenses, such as a rental apartment in New York City, parties, fund raisers, charitable contributions, luxury car rentals, and club memberships. *Id.* The pension plan needed to be terminated. *Id.*

On October 22, 2006, the proprietary partners held a meeting to, among other things, vote on the pension plan's termination and determine the compensation owed to the proprietary partners. *Id.* at ¶ 2.17. At the meeting, the proprietary partners unanimously approved the pension plan's termination, effective December 31, 2006. *Id.* Additionally, the proprietary partners approved a proportional compensation scheme for the partners that were disproportionately prejudiced by the pension plan's termination (the "proportional compensation scheme").[3] *Id.*

In April of 2007, Polanco was summoned to a meeting with Attorney Antonio Sifre, then FGR's President. *Id.* at ¶ 2.19. At the meeting, Polanco was told that the

---

1. The complaint does not explicitly state that FGR maintained a medical plan. However, the existence of the plan can be inferred through other allegations in the complaint. *Id.* at ¶ 3.10 ("Condemn defendants to grant the benefits of the Medical Plan that it has granted the other retirees...."). In fact, FGR relies on the existence of the medical plan as a means to confer jurisdiction. **ECF No. 25** at 9.

2. Polanco had already decided to join the judiciary. *Id.* at ¶ 2.14. Polanco did not take his judicial oath of office until November 26, 2006. *Id.* at ¶ 2.18.

3. According to the complaint, the pension plan's termination disproportionately benefitted the partners sitting on the governing committees. *Id.* at ¶ 2.15.

FGR decided not to pay him the entirety of the agreed upon amount because FGR was unable to obtain the required financing. *Id.* Instead, Polanco was offered the option of collecting the total amount due, subject to the fund's availability, over seven years, or collecting 60% of what was originally agreed upon in 30 days. *Id.* Polanco rejected FGR's offer and offered to accept 60% in thirty days, conditioned on the remaining 40% to be paid over seven years. *Id.* at ¶ 2.20. In September of 2007, FGR told Polanco that it did not owe him any money. *Id.* at ¶ 2.21.

## II. Standard of Law

Pursuant to 28 U.S.C. § 1441(a), a defendant in a civil action commenced in state court may remove the case to federal court if the federal court has original jurisdiction. *See generally Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). Should the district lack subject matter jurisdiction, the case must be remanded back to state court for disposition. 28 U.S.C. § 1447(c).

The party invoking the district court's jurisdiction, here FGR, bears the burden of establishing the district court's subject matter jurisdiction. *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.1999)(internal citations omitted). In assessing its jurisdiction, the Court confines its inquiry to the four corners of plaintiffs' complaint. *Id.* (internal citations omitted).

## III. Analysis

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). That is, federal courts may only exercise jurisdiction over cases and controversies inasmuch as the Constitution and Congress authorizes. *Id.* Federal courts are only authorized to exercise jurisdiction over two categories of cases: diversity of citizenship and federal question. *See* 28 U.S.C. §§ 1331, 1332. FGR's notice of removal invokes the Court's federal question jurisdiction.

Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The well-pleaded complaint rule guard over whether a case "arises under" federal law. *Aetna Health,* 542 U.S. at 207, 124 S.Ct. 2488 (internal citations omitted); *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4,* 132 F.3d 824, 831 (1st Cir.1997)("The gates of federal question jurisdiction are customarily patrolled by a steely-eyed sentry-the 'well-pleaded complaint rule ....' ")(internal citations omitted).

According to the well-pleaded complaint rule, federal courts do not have subject matter jurisdiction "if no federal claim appears within the four corners of the complaint." *Id.* (internal citations omitted). At first blush, plaintiffs' complaint does not appear to present a federal question because it does not specifically invoke the constitution, a federal law, or treaty. Rather, plaintiffs' complaint asserts five claims seemingly rooted in Puerto Rico law. *Danca,* 185 F.3d at 4 (noting that the plaintiff's complaint did not present a federal question because the complaint only asserted state law causes of action). Plaintiffs allege that FGR: (1) breached its fiduciary duties by mismanaging the pension plan; (2) constructively excluded Polanco from FGR in bad faith; (3) failed to provide plaintiffs with benefits under the medical plan; (4) breached the proportional compensation scheme, which provided additional compensation after the pension plan was terminated; and (5) engaged in wrongful, intentional and bad faith conduct causing Polanco's resignation, humili-

ation and exclusion from FGR.[4] **ECF No. 1–2** at 11–13; **ECF No. 51.**

■ Nevertheless, that plaintiffs' complaint, on its face, does not explicitly invoke a federal law does not preclude federal subject matter jurisdiction. *Danca,* 185 F.3d at 4. The well-pleaded complaint rule is subject to an exception commonly referred to as the complete preemption doctrine. *Id.* According to the complete preemption doctrine, "[w]here a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded." *Id.* (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–4, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). FGR alleges that this Court has subject matter jurisdiction over plaintiffs' complaint because, *inter alia,* plaintiffs' allegations that FGR breached its fiduciary duties in handling the pension plan and failed to grant plaintiffs the benefits of the medical plan are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* **ECF No. 25** at 6–15.

■ A claim that is disguised as arising under state law is completely preempted by ERISA if it falls within the scope of ERISA's civil enforcement provision, ERISA § 502(a), 29 U.S.C. § 1132(a) ("section 502"). *Aetna Health,* 542 U.S. at 209, 124 S.Ct. 2488 ("Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.")(internal citations omitted); *Danca,* 185 F.3d at 5 (internal citations omitted). Section 502(a) provides that a participant or beneficiary may bring a civil action to: (1) "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"; or (2) for a "appropriate relief" stemming from a breach of fiduciary duties. *See generally Oscar A. Samos, M.D., Inc. v. Dean Witter Reynolds, Inc.,* 772 F.Supp. 715, 717 (D.R.I. 1991).

■ Plaintiffs' claim that FGR has not provided plaintiffs with the benefits of the medical plan is completely preempted by ERISA. **ECF No. 1–2** at 13, ¶ 3.10. Section 502(a) permits a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan." Here, there is little doubt that plaintiffs cause of action falls under section 502(a) because it specifically seeks the benefits under the plan. *Id.* at ¶ 3.10 ("Condemn defendants to grant the benefits of the Medical Plan that it has granted to other retirees....."). Moreover, the damages plaintiffs seek for FGR's purported failure to provide medical plan benefits relates directly to the provisions of the medical plan. *Id.* Plaintiffs pray for "reimbursement of the payments that plaintiffs had to make in excess for this item, which is estimated in $18,000." *Id.* Indeed, plaintiffs' choice not to argue that this claim is rooted in state law is indicative of its federal character.

---

4.  Plaintiffs assert that paragraphs 3.3, 3.8, 3.7 and 3.11 assert additional causes of action. **ECF No. 51** at 1. Upon review, these paragraphs merely contain requests for damages, not additional theories of liability. *See e.g.,* **ECF No. 1–2** at 12, ¶ 3.3 ("It is decreed that *all* the proprietary partners and/or shareholders of **FGR** have to collate all the funds received in capital dividends, expense accounts, 'quarters,' 'e/a' and any other extra amounts received in the years in which sufficient funds were *not* contributed to the Pension Plan ....")(emphasis in original).

Thus, inasmuch as plaintiffs seek redress for FGR's alleged failure to provide benefits under the medical plan, plaintiffs' complaint is completely preempted by ERISA and raises a federal question. *See Aetna Health*, 542 U.S. at 210, 124 S.Ct. 2488 ("If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits.").

■ Plaintiffs' complaint also alleges that FGR "beached in bad faith its fiduciary duty by not attending with due diligence the adequate handling and complete payment of the institution's Pension plan...." **ECF No. 1–2** at 11–12, ¶ 3.2 (emphasis omitted). In addition, plaintiffs' seek the total amount of money he would have received from the pension plan had it been fully funded as damages for FGR's purported breach of its fiduciary duties.[5] *Id.* at ¶ 3.2. Thus, plaintiffs' claim invokes section 502(a) in two manners: it seeks to "recover benefits due to [the]m under the terms of ... [their] plan" against an entity which allegedly breached "the responsibilities, obligations, or duties imposed upon fiduciaries." *Id.*; 29 U.S.C. § 1109. Accordingly, because section 502(a) provides a cause of action for breach of fiduciary duty as well as a cause of action to recover benefits owed under the plan, plaintiffs' claim that FGR breached its fiduciary duties in attending to the pension plan must be recast as a federal question arising under ERISA.[6] *See Dudley Supermarket, Inc. v. Transamerica Life Ins. & Annuity Co.*, 302 F.3d 1, 3 (1st Cir. 2002)("There can be no doubt that if appellants' purported state law claims in fact charged Transamerica with breach of fiduciary duty while acting as an ERISA fiduciary, ERISA would preempt completely their claims which thus would have to be asserted, if at all, under ERISA.")(citing *Danca*, 185 F.3d at 4–6); *Urological Surgery Prof'l Ass'n v. William Mann Co.*, 764 F.Supp.2d 311, 327 (D.N.H.2011)("with respect to a claim asserting the breach of a fiduciary duty, the jurisdiction of the federal courts is exclusive. This means that if a plaintiff brought a breach-of-fiduciary-duty claim in state court and the defendant pleaded ERISA preemption, the court would be deprived of jurisdiction over the subject matter."). Accordingly, because plaintiffs' breach of fiduciary duty claim is preempted by ERISA, plaintiffs' complaint presents a federal question and the Court has subject matter jurisdiction.

Plaintiffs allege that the nexus between their breach of fiduciary duty claim and the pension plan is tenuous. **ECF No. 12** at 6. Plaintiffs rely on *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007 (11th Cir.2003). In *Ervast*, the plaintiff, an employee, participated in an ERISA employee benefits plan offered by the defendant, the plaintiff's employer. The plaintiff filed suit in state court alleging, among other things, that the defendant breached its fiduciary duty when it failed to inform plaintiff of a potential merger between defendant and another company. *Id.* The district court held that it had subject-matter jurisdiction over the plaintiff's claim because it was preempted by ERISA—the claims were "related to Defendant's administration of an ERISA plan." *Id.* at 1011. The Elev-

---

**5.** In *Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir.1997), the First Circuit Court of Appeals noted that suits for breach of fiduciary duty under ERISA only entitles a plaintiff to equitable relief, not monetary damages. In any event, the Court reserves judgment on whether plaintiffs may recover the damages requested because the parties have not briefed this matter.

**6.** At present, the parties do not dispute whether FGR is a fiduciary within ERISA's scope. *See Dudley Supermarket, Inc. v. Transamerica Life Ins. & Annuity Co.*, 302 F.3d 1, 3 (1st Cir.2002).

enth Circuit Court of Appeals reversed the district court's decision. The Eleventh Circuit reasoned that the plaintiff's breach of fiduciary duty claim was unrelated to the ERISA benefits plan inasmuch as the claim related to the defendant's alleged duty to inform plaintiff of the merger talks stemmed from the plaintiff and the defendant's relationship as majority and minority shareholders, not vis-a-vis their relationship as sponsor and participant in the ERISA benefits plan. *Id.* at 1015–16. Moreover, the Eleventh Circuit noted that the allegations in the complaint did not seek a clarification of the plaintiff's rights under the ERISA benefits plan, enforcement of plaintiff's rights under the plan or question the plan's administration. *Id.*

Here, like in *Ervast,* plaintiffs allege that they are the participants in or the beneficiaries of the pension plan, which is maintained and supervised by FGR. **ECF No. 1–2** at ¶ 2.6. Additionally, plaintiffs, like the plaintiff in *Ervast,* allege that FGR breached its fiduciary duty. *Id.* at 3.2. The similarities, however, end there. In the present case, plaintiffs' breach of fiduciary duty claim, unlike the claim in *Ervast,* relates directly to the pension plan's administration. *Id.* ("[FGR] violated and/or breached in bad faith its fiduciary duty by not attending with due diligence the adequate handling and complete payment of the institution's Pension Plan . . . .")(emphasis omitted). Plaintiffs posit that they suffered damages because FGR's mismanagement of the pension plan resulted in the pension plan being under funded by approximately $15 million and eventually necessitated the pension plan's termination. *Id.* Plaintiffs aver that, instead of making full contributions to the pension plan, the governing committees authorized extravagant expense accounts, bonuses and superfluous expenses, such as a rental apartment in New York City, parties, fund raisers, charitable contributions, luxury car rentals, and club memberships. **ECF**

**No. 1–2** at ¶ 2.13. Thus, plaintiffs' complaint, unlike the allegations in *Ervast,* does not exclusively require reference to state law. Rather, FGR's duties in administering the pension Plan are defined by ERISA. Whether or not FGR complied with its duties, therefore, presents a federal question.

Plaintiffs allege that remand is warranted because its "principal allegation" alleges that FGR breached a contract providing alternative compensation for Polanco once the pension plan was terminated. That plaintiffs choose to hang their hats on a theory rooted in state law does not strip the Court of jurisdiction. Federal courts have supplemental jurisdiction over state law claims that are "so related" to the federal claims, such that they "form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a); *City of Chi. v. Int'l Coll. of Surgeons,* 522 U.S. 156, 164–65, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (holding that supplemental jurisdiction under 28 U.S.C. § 1367(a) "applies with equal force to cases removed to federal court as to cases initially filed there."); *Negron–Fuentes v. UPS Supply Chain Solutions,* 532 F.3d 1, 7 (1st Cir.2008). In the present case, the parties do not cast any doubt that the plaintiffs' claims are sufficiently related.

## IV. Conclusion

Accordingly, because plaintiffs' complaint raises a federal question, plaintiffs' motion to remand (**ECF No. 12**) is **DENIED.**

**SO ORDERED.**